In the Interest of M.J.Z., a Child.

No. 01–93–00220–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 17, 1994.

John Graml, Michael A. Hiller, John Graml & Associates, P.C., Houston, for appellant.

Dan Morales, Will Pryor, Mary F. Keller, Samuel T. Jackson, Robert T. Warhola, II, Rhonda Amkraut Pressley, Austin, for appellees.

Before OLIVER–PARROTT, C.J., and O'CONNOR and WILSON, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

Samuel Zolan (appellant), the father and possessory conservator of the child, Michael Zolan, appeals from a judgment for unpaid child support arrearage. The Texas Attorney General (appellee) brought the action to reduce unpaid child support to judgment. *See* TEX.HUM.RES.CODE ANN. § 76.007 (Vernon Supp.1994), § 76.009 (Vernon Supp. 1994). Mr. Zolan argues the judgment should be reversed because, although the proceeding was filed within four years after his son became an adult at age 18, he was not served with citation within such period or with due diligence after the period had expired. We affirm.

### Factual Background

Samuel Zolan and Elvie Zolan (now Starrett) divorced on February 29, 1980. The decree of divorce appointed Mrs. Starrett managing conservator of their son, Michael Zolan, who was born on July 28, 1970. Mr. Zolan was ordered to pay child support of $400 per month to Mrs. Starrett.

On June 9, 1992, forty-nine days before Michael turned 22 years old, but within the four-year period after Michael's eighteenth birthday, the attorney general filed a motion to reduce unpaid child support to judgment. According to the motion, the aggregate arrearage, as of May 27, 1992, was $13,743.39. Mr. Zolan was served with citation on September 22, 1992. A hearing was held on December 2, 1992.

On January 14, 1993, the trial court signed a corrected judgment, finding Mr. Zolan in arrears on child support in the total sum of $13,743. The trial court signed findings of fact and conclusions of law on January 21, 1993.

### Due diligence in service of citation

In his first point of error, Mr. Zolan contends the trial court erred in failing to find that the attorney general did not exercise due diligence in procuring the issuance and service of process. In his third point of error, he states the trial court committed an abuse of discretion in making the following conclusions of law because there is nothing to support a finding of due diligence on the part of the attorney general:

3. The Time Limitations prescribed in Texas Family Code Section 14.41(b) were tolled by the filing of the Motion to Reduce Unpaid Child Support to Judgment within four years after the child Michael J. Zolan became an adult and the use of due diligence by the Attorney General of Texas in securing service over the Respondent, Samuel G. Zolan.

4. All legal prerequisites to the granting of a money judgment have been met.

5. The Attorney General of Texas is awarded a judgment for past-due child support against Samuel G. Zolan in the amount of $13,743.00, together with interest at the legal rate.

The attorney general responds that there is ample evidence in the record that diligence was exercised in procuring service of citation upon Mr. Zolan. Furthermore, he contends that section 14.41 is a jurisdictional statute, and the tolling rules, such as diligence, typi-

cally applied to statutes of limitation, do not apply to section 14.41.

Section 14.41(b) of the Family Code reads as follows:

(b) Time Limitations. The court of continuing jurisdiction retains jurisdiction to confirm the total amount of child support in arrears and enter judgment for past-due child support obligations if a motion to render judgment for the arrearages is filed within four years after:

(1) the child [1] becomes an adult; or

(2) the date on which the child support obligation terminates pursuant to the decree or order or by operation of law.

TEX.FAM.CODE ANN. § 14.41(b) (Vernon Supp. 1994).[2]

■ We agree with the attorney general that section 14.41(b) should not be subject to a due diligence analysis. Unlike statutes of limitation, it is jurisdictional in nature. Section 14.41(b) clearly defines the continuing subject matter jurisdiction of the trial court. *In re C.L.C.*, 760 S.W.2d 790, 792 (Tex. App.—Beaumont 1988, no writ); *Sandford v. Sandford*, 732 S.W.2d 449, 451 (Tex.App.—Dallas 1987, no writ); *see In re Dickinson*, 829 S.W.2d 919, 922 (Tex.App.—Amarillo 1992, no writ); *Jordan v. Middleton*, 762 S.W.2d 339, 342 (Tex.App.—San Antonio 1988, no writ). Unlike a statute of limitations, the four-year period contained in section 14.41(b) does not run from the accrual of a cause of action, but starts to run from the time the court's jurisdiction would normally end. TEX.FAM.CODE ANN. § 14.41(b). The statute, therefore, expands the period of the court's jurisdiction over the parent-child relationship and mitigates the earlier results where jurisdiction ended on the date when a child turned 18 or was emancipated. *C.L.C.*, 760 S.W.2d at 792.

Because section 14.41(b) addresses a court's jurisdiction, tolling rules typically applied to statutes of limitations do not apply to section 14.41(b). *See C.L.C.*, 760 S.W.2d at 792 (appellate court found running of two-year period not suspended under TEX.CIV. PRAC. & REM.CODE ANN. § 16.063, which applies only to statutes of limitation). Conceptually, an attempt to collect child support arrearage is different than the filing of a cause of action for money damages. The latter is subject to the traditional two- or four-year statutes of limitation to give the defendants reasonably prompt notice of a potential claim. An action for child support, however, is a motion filed in a matter over which the court has continuing jurisdiction. The Beaumont court, calling the statute jurisdictional, concluded that section 14.41(b) could not be tolled by a defendant's absence from the State. *C.L.C.*, 760 S.W.2d at 792. It is analogous that the existence or absence of due diligence, like presence within the State, is not a valid or relevant inquiry.

The language of section 14.41(b) uses the word "filings" rather than the phrase, "bringing suit." Most statutes of limitations require a plaintiff to "bring suit" within a relevant limitation period. *See, e.g.*, TEX.CIV. PRAC. & REM.CODE ANN. §§ 16.002–16.004 (Vernon 1986). The supreme court interprets the phrase "bring suit" to require that a plaintiff not only file suit within the limitations period, but use diligence in serving a defendant with process. *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex.1990). In contrast, the phrase "bring suit" does not appear in section 14.41(b). Instead, section 14.41(b) simply requires that a motion to render judgment for arrearages be "filed."

■ Mr. Zolan agrees that the motion to reduce unpaid child support to judgment was timely filed on June 9, 1992. Further, Mr. Zolan does not challenge the trial court's

---

1. "Child" or "minor" means a person under 18 years of age who is not and has not been married or who has not had his disabilities of minority removed for general purposes. In the context of child support, "child" includes a person over 18 years of age who is fully enrolled in an accredited secondary school in a program leading toward a high school diploma. "Adult" means any other person.

TEX.FAM.CODE ANN. § 11.01(1) (Vernon Supp. 1994).

2. This language reflects the amendments made by Act of June 18, 1993, 73rd Leg., R.S., ch. 798, § 14, 1993 Tex.Gen.Laws 3169, 3174. Although the changes were not in effect when the trial court entered its judgment, they have no impact on our reasoning.

conclusion of law number two, that the court had jurisdiction over the parties and subject matter of the action. Therefore, the trial court retained and possessed continuing jurisdiction of the motion to reduce at the time of hearing and properly granted judgment in favor of the attorney general of Texas.

We overrule appellant's points of error one and three. The inquiry into due diligence was unnecessary. The motion was timely filed. TEX.FAM.CODE ANN. § 14.41(b).

## Conflicts between findings of fact

■ In his second point of error, Mr. Zolan asserts the trial court's finding of fact number six (as submitted by the attorney general) is in irreconcilable conflict with the additional findings of fact and conclusions of law as found by the trial court pursuant to Mr. Zolan's request for additional and amended findings of fact.

On December 7, 1992, five days after the judgment was signed, Mr. Zolan filed a request for findings of fact and conclusions of law. The record does not show that Mr. Zolan proposed any findings or conclusions. The attorney general proposed findings and conclusions on December 17, 1992, which were signed by the trial court on January 21, 1993. These are the only signed findings of fact and conclusions of law in the record.

On December 29, 1992, Mr. Zolan filed a request for additional and amended findings of fact and conclusions of law. A copy of this request, with handwritten rulings, "denied" or "granted," appearing after each finding or conclusion, appears in the transcript. A document entitled "Additional and Amended Findings of Fact and Conclusions of Law," with typewritten rulings, "denied" or "granted," appears in the first supplemental transcript. Neither the request nor the document is signed by the trial court.

We find there is no irreconcilable conflict because the trial court did not make any additional or amended findings of fact or conclusions of law. We overrule appellant's second point of error.

## Admissibility of Mrs. Starrett's testimony

In his fourth point of error, Mr. Zolan states that the trial court committed harmful error when it permitted Elvie Starrett to testify concerning other actions for enforcement she had brought against Mr. Zolan, overruling his objection of irrelevancy. Because Mrs. Starrett's testimony went to the issue of due diligence, an inquiry we have held was unnecessary in points one and three, it is not necessary for us to address appellant's point of error four.

The judgment of the trial court is affirmed for the reasons stated herein.

Justice WILSON concurring.

WILSON, Justice, concurring.

I concur in the result reached by the majority, but would hold that section 14.41(b) of the Family Code is both a jurisdictional statute and a statute of limitation.

Section 14.41(b) of the Family Code reads as follows:

(b) Time Limitations. The court of continuing jurisdiction retains jurisdiction to confirm the total amount of child support in arrears and enter judgment for past-due child support obligations if a motion to render judgment for the arrearages is filed within four years after:

(1) the child [1] becomes an adult; or

(2) the date on which the child support obligation terminates pursuant to the decree or order or by operation of law.

TEX.FAM.CODE ANN. § 14.41(b) (Vernon Supp. 1994).

The very words of the statute demonstrate its jurisdictional requirement and its intended limitations analysis. In fact, the Beaumont Court of Appeals so held in *In re C.L.C.*, 760 S.W.2d 790, 792 (Tex.App.—Beaumont 1988, no writ). By enacting sec-

---

1. "Child" or "minor" means a person under 18 years of age who is not and has not been married or who has not had his disabilities of minority removed for general purposes. In the context of child support, "child" includes a person over 18 years of age who is fully enrolled in an accredited secondary school in a program leading toward a high school diploma. "Adult" means any other person. TEX.FAM.CODE ANN. § 11.01(1) (Vernon Supp. 1994).

tion 14.41(b), the legislature did not change the legal principle that, at some point, the trial court loses continuing subject matter jurisdiction over child support arrearages. *In re C.L.C.*, 760 S.W.2d at 792. Section 14.41(b) gives the trial court longer in enforcement of child support matters, but it clearly limits the continuing subject matter jurisdiction of the trial court. *Id.* A "due diligence" analysis should, therefore apply with respect to section 14.41 when service is accomplished after limitations has run.

The Texas Supreme Court has stated that to "bring suit" within the limitations period, a plaintiff must not only file suit within the applicable limitations period,[2] but must also use diligence to have the defendant served with process. *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex.1990); *see Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 890 (Tex.1975); *see also Butler v. Ross*, 836 S.W.2d 833, 835 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Perry v. Kroger Stores, Store No. 119*, 741 S.W.2d 533, 534 (Tex.App.—Dallas 1987, no writ). "Due diligence" is tested by (1) whether the plaintiffs acted as ordinary prudent persons would act under the same circumstances, and (2) whether the plaintiffs acted diligently up until the time the defendant was served. *Eichel v. Ullah*, 831 S.W.2d 42, 43 (Tex.App.—El Paso 1992, no writ). Lack of due diligence has been found: (1) as a matter of law, where there were unexplained periods of six months, 20 months, and 12 months during which no efforts were made to serve the defendants, *Gant*, 786 S.W.2d at 260; (2) where there was no activity or effort at service for a period of five and one-half months and no showing of diligence in obtaining issuance of substituted service or checking an alternative address suggested by the constable, *Butler*, 836 S.W.2d at 836; (3) where service was accomplished nine months after suit was filed and the record showed no action to secure service after the first failed attempt for a period of eight months, *Perry*, 741 S.W.2d at 534; and (4) where issuance of citation was not requested for two and one-half months, service was not accomplished until 14 months after suit was filed, and no due diligence

exercised for a period of nine months after citation issued, *Eichel*, 831 S.W.2d at 44. In *Zale Corp.*, the supreme court reversed a summary judgment, based on limitations, where the cause of action arose on July 2, 1971, the suit was filed on June 28, 1973, and issuance of citation was requested on August 3, 1973. 520 S.W.2d at 890. The supreme court held that where the nonmovant interposes a suspension statute or pleads diligence in requesting issuance of citation, the limitation defense is not conclusively established until the movant meets his burden of negating these issues. *Id.* at 891.

In the findings of facts and conclusions of law, the trial court found the attorney general exercised due diligence in accomplishing service on Mr. Zolan. Those findings are not conclusive when a statement of facts appears in the record. *Middleton v. Kawasaki Steel Co.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e. per curiam*, 699 S.W.2d 199 (Tex.1985). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards we use to review the evidence to support jury findings. *IFG Leasing Co. v. Ellis*, 748 S.W.2d 564, 566 (Tex.App.—Houston [1st Dist.] 1988, no writ).

The attorney general filed the motion to reduce unpaid child support to judgment on June 9, 1992. The prayer included "that process be issued as required by law, [and] that an order setting hearing be issued." The citation issued on September 3, 1992, and was served on Mr. Zolan on September 22, 1992, approximately three and one-half months after suit was filed. Mr. Zolan was not served at the address listed in the citation because he had been evicted. He was served "at the eviction court."

At the hearing on the motion, a representative of the district clerk's office testified as follows:

Q: Would you tell the Court the procedure for issuing citations on Attorney General's cases?

A: What occurs on these cases is when a suit is filed—if it's a new suit—if there is

2. *See* TEX.CIV.PRAC. & REM.CODE ANN. §§ 16.002,   16.003, 16.004 (Vernon 1986).

an Order required before the service can be issued, the file is sent to the Court, the Order is signed, the file is maintained in the court until 30 or 45 days prior to the hearing date.

At such time the court clerk who monitors these files sends these files down to the Service Department for issuance.

Q: Yes, Ma'am. Can you tell what is the average time that it takes to issue citations on these cases?

A: From the date the Order has been signed?

Q: Yes.

A: On an average right now the hearings are being given two or three months off—you know—three or four months off so it takes approximately three months in some cases and in some cases longer to get it issued.

On cross-examination, the representative agreed it was possible to get "rush service," if the proper form were completed or a verbal request made, but said even then the attorney general would not be treated like any other plaintiff because of the volume of work coming from the attorney general's office and the limited staff of the clerk's office. The representative did not know if rush service had been requested in this case. She also stated:

A: If it was strictly a citation only with no order being required on the hearing, it should be done within two or three days from the date it was filed. If it has an order, then it would depend on the court. It would be entered, should reach the court within two or three days, depending on the court's situation—the availability—if the judge is here, then the Clerk would present it to the Judge for signature. If he's not, then they would take steps necessary to find another judge to sign it and get it signed and back down to service; and once it reached service, they would process it.

Q: But in any event if the Court was in session and the Court on the bench, it could never take more than a week or two, could it?

A: It should not. . . .

The delay in service here was caused largely by the delay between the filing date and the date of issuance of citation. There was evidence that the delay in issuance of citation was caused not by a lack of diligence on the part of the attorney general, but by the volume of these kinds of cases and the inability of the clerk's office to rapidly process them given its staff size.

Like the majority, I would overrule appellant's first and third points of error, but because the record shows that the attorney general exercised due diligence in procuring the issuance of service of process.