In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-04-00077-CV
____________

DEVON SFS OPERATING, INC., AND IMC GLOBAL, INC., Appellants

V.

FIRST SEISMIC CORPORATION, Appellee




On Appeal from the 80th District Court 
Harris County, Texas
Trial Court Cause No. 2002-32651




MEMORANDUM OPINION
          This declaratory judgment case resolved competing interpretations of an
indemnity provision in a contract transferring ownership of seismic data.


 Appellee
and plaintiff below, First Seismic Corporation (First Seismic), prevailed in the trial
court on its claim for indemnity against appellants, Devon SFS Operating, Inc.
(Devon)


 and IMC Global, Inc. (IMC). Trial was to the court, which filed findings
of fact and conclusions of law. In four issues on appeal, Devon and IMC argue that
the trial court erred in interpreting the indemnity provision and by permitting Seismic
to recover attorney’s fees and expenses that Devon and IMC contend are either
nonrecoverable or unreasonable. We affirm.
Facts and Procedural Background
          In early 1980, Adobe Resources Corporation (Adobe), Freeport McMoran Oil
& Gas Company (McMoran) and McKenzie Management, Inc. (McKenzie) entered
into a joint venture agreement to develop seismic data, screen leads and prospects,
acquire acreage on prospects, and drill test wells in the East Texas basin area. Adobe,
McMoran, and McKenzie owned participating interests in the joint venture’s assets
in proportions of 37.5 percent, 50 percent, and 12.5 percent, respectively. The
venture agreement expired by its own terms on December 31, 1987. Devon is
Adobe’s successor-in-interest and IMC is McMoran’s successor-in-interest. 
McKenzie’s successors-in-interest to its 12.5 percent interest are East Texas Seismic
Data LLC (ETSD) and Capmac Eighty-Two Limited Partnership (Capmac).
A.      September 1990 Data Exchange: First Seismic and Adobe and McMoran 
          Lance Moreland, former vice-president of First Seismic Corporation (First
Seismic), explained at trial that his company’s offshore market concentration had
ceased by 1990. By summer of that year, operations had become reduced to winding
down the company’s existing business in that market, under the supervision of the
company president, Rogers Beal. Simultaneously, Adobe and McMoran, which had
shifted its market focus from the East Texas basin to developing an offshore market,
proposed the following transaction: Adobe and McMoran would transfer their
ownership of the joint venture’s “1,000 plus miles” of seismic data assets to First
Seismic; in exchange, First Seismic would surrender its licenses to 5,000 miles of
offshore seismic data to Adobe and McMoran. Under the terms of the proposed
transfer, First Seismic would forego any right to sell further licenses pertaining to the
data that it was transferring and would also absorb the costs of required reprocessing
of the data before releasing it to Adobe and McMoran.


 Kenneth J. Huffman,
McMoran’s vice-president for exploration, served as chief negotiator among the
parties, and Moreland drafted the agreement that memorialized the negotiations. 
          As negotiations for the transfer progressed, however, Adobe and McMoran
proved “unable to communicate” with McKenzie about transferring its 12.5 percent
interest in the joint venture. Hoffman ultimately represented that McKenzie had
either abandoned the joint venture or was in bankruptcy and could not be located in
order to transfer the 12.5% minority interest. At that point, Beal asked that Adobe
and McMoran provide $50,000 to compensate First Seismic for that interest, which
Adobe and McMoran could not convey because McKenzie retained it. In addition,
although indemnity provisions were not initially contemplated as part of the transfer,
First Seismic’s general counsel required that the parties’ final agreement include an
indemnity provision in favor of First Seismic in the event of claims by the 12.5
percent ownership or by others claiming through them. In turn, Adobe and McMoran
required indemnity provisions by First Seismic for the data that it was transferring. 
          In September 1990, the parties executed their agreement for the mutual
exchange of data. The agreement recites that (1) Adobe and McMoran, the “majority
owners” of the seismic data, would transfer to First Seismic “all of [their] right, title,
and interest” in the data, but that (2) McKenzie, “the minority owner,” would “retain
a 12.5% interest in said data,” and that (3) McMoran


 would “compensate First
Seismic $50,000 for said interest” on delivery of First Seismic’s Exxon data to
McMoran. The agreement also includes an indemnity provision, paragraph 5, which
reflects the parties’ reciprocal agreements to indemnify each other against claims
related to the seismic data they had exchanged. Paragraph 5.B., on which First
Seismic relies in this lawsuit, addresses Adobe’s and McMoran’s transfer of their
combined 87.5 percent ownership and McKenzie’s retained 12.5 percent interest in
the seismic data as follows: 
McMoran and Adobe hereby indemnify and hold harmless FIRST
SEISMIC from and against any and all claims, cost, expenses or causes
of action that may be asserted by the referenced minority owners or
other owners should they exist. 

[Upper case in original.]



B.      Oklahoma Litigation against First Seismic and Seitel
          In 1997, McKenzie’s legal successors-in-interest, ETSD and Capmac, filed suit
in the United States District Court for the Northern District of Oklahoma against
Devon and IMC, Adobe’s and McMoran’s legal successors-in-interest, First Seismic,
and Seitel, to which First Seismic had transferred its interest in 1994. ETSD and
Capmac (collectively, the current minority interests) asserted claims for damages,
including punitive damages, for conversion of their 12.5 percent proportionate
interest and sought an accounting for proceeds from sales by the defendants that arose
from that interest. The current minority owners initially sought more than $1.2
million in damages. In 1998, the federal district court rendered summary judgment
in favor of Devon and IMC on the conversion claim, on the grounds that the 1990
agreement unequivocally granted Adobe and McMoran the right to transfer their
proportionate interest in the joint venture, without consent of the former minority
owner or successors to that owner, two years after the joint venture expired on its own
terms in December 1987. Because the transfer occurred in 1990, there was no
conversion. The United States Court of Appeals for the Tenth Circuit (the Tenth
Circuit) affirmed. E. Tex. Seismic Data LLC v. Seitel Data, Inc., 201 F.3d 447 (10th
Cir. 1999) (unpublished table disposition).


 
          Following a February 5, 2002 remand from the Tenth Circuit on the existing
minority owners’ claim for accounting, First Seismic amended its pleadings to assert
a limitations bar and equitable defenses that included waiver, estoppel, ratification
lâches, and abandonment. In addition, First Seismic also conducted an extensive
inquiry into whether the current minority owners actually owned the 12.5 percent
McKenzie interest and pursued a summary judgment on that issue, but did not prevail. 
Trial was set for December 2002 before a different district-court judge on an
expedited discovery schedule complicated by a lack of supporting First Seismic
records, due to First Seismic’s having ceased business operations in 1994. First
Seismic’s defense in the accounting case focused on close scrutiny of each of the 120
transactions to which the current minority owners asserted a right to share First
Seismic’s proceeds, with a view of reducing that total. 
          The accounting case was tried to the federal district court, jury, which filed
findings of fact and conclusions of law. The court ruled that the present minority
owners had standing to sue, as McKenzie’s successors-in-interest, and identified 33
transactions for which the minority owners were entitled to a 12.5 percent share in
First Seismic’s proceeds. The court further ruled that, on acquiring its 87.5 percent
interest in the seismic data through the September 1990 transfer with Adobe and
McMoran, First Seismic became a cotenant with the minority owners. The court
rejected, however, Adobe’s and McMoran’s claim that, because First Seismic did not
notify the cotenant minority owners of either the September 1990 transfer or its own
transfer of the data to Seitel, the cotenancy terminated on either of those events. 
Finally, and after rejecting the current minority owners’ claims to a share of proceeds
for several licensing transactions, the federal district court ruled that First Seismic
owed its cotenants, the current minority owners, 12.5 percent of its proceeds, for a
total of $193,973.49, derived from $831,899.00 of license proceeds. The total owed
included $9,681 allocated as costs. 
C.      This Litigation
          First Seismic demanded and was refused indemnity pursuant to paragraph 5.B.
of the September 1990 agreement from Adobe’s and McMoran’s successors-in-interest, Devon and IMC, and then filed this lawsuit. Devon and IMC responded by
filing a combined answer, special exceptions, and plea-in-abatement, but obtained no
ruling on the latter two.


 Devon and IMC moved for summary judgment, to which
First Seismic filed a response and its own cross-motion for summary judgment, and
both sides filed supplemental responses to the corresponding motions. The trial court
set the case for trial without ruling on either motion. Neither side requested a jury
trial. 
          In response to notices of deposition by First Seismic, Devon and IMC filed a
formal, pretrial stipulation with the trial court. This stipulation includes recitals that
(1) they were the legal successors-in-interest of Adobe and McMoran, respectively,
(2) they were unable to locate representatives of either company, but (3) if they were
to designate representatives to respond to the matters identified in First Seismic’s
notices of deposition, which included inquiries concerning negotiations for the 1990
agreement and the parties’ intent in including certain provisions in the agreement,
those representatives would answer “I don’t know.”
          First Seismic’s three witnesses at the bench trial were Moreland, who testified
concerning the seismic data industry and licensing, in particular, and the two counsel
who represented First Seismic in Oklahoma and in this litigation, who testified on the
issue of attorney’s fees. Devon and IMC presented only one witness, an attorney,
who testified as an expert to challenge the reasonableness of the attorney’s fees and
expenses that First Seismic claimed. The trial court signed a final judgment on
October 16, 2003. 
          The trial court’s final judgment declares that the indemnity provision of the
1990 agreement required Devon and IMC to indemnify First Seismic for the
$203,654.66 judgment and costs awarded against First Seismic in the Oklahoma
litigation. The judgment also awarded interest on that judgment, $237,387.68 in
attorney’s fees and $34,081.94 in costs incurred in that lawsuit, $109,017 in
attorney’s fees incurred in this lawsuit, prejudgment interest on the award of
attorney’s fees and costs awarded by the Oklahoma judgment, postjudgment interest
on the attorney’s fees and costs awarded in this lawsuit, and conditional attorney’s
fees for this and any subsequent appeal to the Supreme Court of Texas. The trial
court’s second amended findings of fact and conclusions of law resulted from the
respective parties’ proposing and challenging earlier versions. After the trial court
signed and filed second amended findings and conclusions, Devon and IMC
superseded the judgment and perfected their appeal.
Devon’s and IMC’s Duty to Indemnify First Seismic
          In their first issue, Devon and IMC contend that the trial court erred in
construing the indemnity provisions of paragraph 5.B. of the 1990 agreement to
include the current minority owners’ demand for an accounting. We construe this
issue as challenging paragraph one of the trial court’s judgment and conclusions of
law one through eleven, and any supporting findings, either expressly stated or
implied, of the trial court’s second amended findings and conclusions.


 Through these conclusions, the trial court construed the indemnity provision as
encompassing the claims of ETSD and Capmac in the Oklahoma lawsuit, in part
because First Seismic, Adobe and McMoran “specifically negotiated” the provision
and “intended that it cover all claims asserted by any owner of the East Texas Data,
including but not limited to, a claim for an accounting for 12.5% of all amounts
attributable to sales and licenses of said data.”
A.      Standards of Review
          Devon’s and IMC’s issue requires that we apply a confluence of standards of
review. We invoke those that govern interpretation of contracts, those that govern
challenges to the sufficiency of the evidence, as well as those that govern the trial
court’s exercise of its discretion.
          1.       Interpretation of Indemnity Agreement
          Indemnity agreements are strictly construed, pursuant to the same, well-settled
principles that control interpretation of contracts, to give effect to the parties’ intent
as expressed in the agreement. See Ideal Lease Serv., Inc. v. Amoco Prod. Co., 662
S.W.2d 951, 953 (Tex. 1984). These principles dictate that courts construe contracts
as a matter of law, and that their rulings are subject to de novo review. See J.M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003) (applying rule in
arbitration-agreement context) (citing Coker v. Coker, 650 S.W.2d 391, 394 (Tex.
1983); C.M. Asfahl Agency v. Tensor, Inc., 135 S.W.3d 768, 780 (Tex.
App.—Houston [1st Dist.] 2004, no pet.) (interpreting asset-purchase agreement);
Tesero Petroleum Corp. v. Nabors Drilling USA, Inc., 106 S.W.3d 118, 125 (Tex.
App.—Houston [1st Dist.] 2002, pet. denied) (interpreting indemnity agreement). 
          In construing a written contract, the court’s primary concern is to ascertain the
true intent of the parties, as expressed in the instrument. J.M. Davidson, Inc., 128
S.W.3d at 229; see C.M. Asfahl Agency, 135 S.W.3d at 780. Accordingly, the court
must examine and consider the entire writing in an effort to harmonize and give effect
to all provisions so that none is rendered meaningless. J.M. Davidson, Inc., 128
S.W.3d at 229. The court may not consider any single provision, taken in isolation,
as controlling, but must consider all provisions in context of the entire instrument. 
Id.
          If considering all provisions enables the court to construe the contract as giving
a “definite or certain legal meaning,” the contract is not ambiguous; it may be
construed as a matter of law and enforced as written. See id.; Stewart Title Guar. Co.
v. Aiello, 941 S.W.2d 68, 73–74 (Tex. 1997). If applying the principles of
construction results in two or more reasonable interpretations, the contract is
ambiguous as a matter of law and presents a factual dispute concerning the intent of
the parties. J.M. Davidson, Inc., 128 S.W.3d at 229. Because ambiguity in a contract
is a question of law, the trial court may conclude that an agreement is ambiguous
without the parties’ having asserted that argument. See id. at 229, 231 (citing Sage
Street Assoc. v. North Dale Constr. Co., 863 S.W.2d 438, 444–45 (Tex. 1993)). 
          2.       Legal and Factual Sufficiency Evidentiary Challenges
          When, as here, a trial court files findings of fact and conclusions of law in
support of its judgment, we review both under well-settled principles. Findings of
fact in a case tried to the trial court have the same force and effect as a jury’s verdict
on questions and are reviewable for legal and factual sufficiency. Anderson v. City
of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991); Min v. Avila, 991 S.W.2d 495,
500 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The trial court’s conclusions of
law are reviewable de novo. McDermott v. Cronin, 31 S.W.3d 617, 623 (Tex.
App.—Houston [1st Dist.] 2000, no pet.). Because the appellate record here contains
a complete reporter’s record of the trial, the trial court’s findings of fact are not
conclusive, but are subject to the same, well-settled standards that govern legal and
factual sufficiency challenges to jury findings. Comm’n of Contracts of the Gen.
Executive Comm. of the Petroleum Workers Union v. Arriba, Ltd., 882 S.W.2d 576,
582 (Tex. App.—Houston [1st Dist.] 1994, no writ); In the Interest of M.J.Z., 874
S.W.2d 724, 728 (Tex. App.—Houston [1st Dist.] 1994, no writ). 
          For this Court to sustain a challenge by Devon and IMC to the legal sufficiency
of the evidence to support findings on which First Seismic, as plaintiff, had the
burden of proof at trial, Devon and IMC must show that no evidence supports the trial
court’s implied factual resolution of the parties’ intent in including both the $50,000
consideration provision and the indemnity provision in the September 1990
agreement. See Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983) (stating
burden on appeal for party challenging legal sufficiency of evidence to sustain
finding on which party did not have burden of proof). 
          In City of Keller v. Wilson. 168 S.W.3d 802 (Tex. 2005), the supreme court
concluded that “[t]he final test for legal sufficiency must always be whether the
evidence at trial would enable reasonable and fair-minded people to reach the verdict
under review. . . . [L]egal-sufficiency review in the proper light must credit favorable
evidence if reasonable jurors could, and disregard contrary evidence unless
reasonable jurors could not.” Id. at 827. The court further held that an appellate
court “cannot substitute its judgment for that of the trier-of-fact, so long as the
evidence falls within its zone of reasonable disagreement.” Id. at 822. Although the
court must “consider evidence in the light most favorable to the judgment, and
indulge every reasonable inference that would support it . . .[,] if the evidence allows
of only one inference, neither jurors nor the reviewing court may disregard it.” Id.
          Evidence may be legally insufficient because “‘(a) there is a complete absence
of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact, (c) the evidence
offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence
conclusively establishes the opposite of the vital fact.’” See Volkswagen of Am., Inc.
v. Ramirez, 159 S.W.3d 897, 903 (Tex. 2004) (quoting Merrell Dow Pharm., Inc. v.
Havner, 953 S.W.2d 706, 711 (Tex. 1997) (in turn quoting Calvert, “No Evidence”
and “Insufficient Evidence” Points of Error, 38 Tex. L. Rev. 361, 362–63 (1960)). 
          For this Court to sustain any challenge by Devon and IMC to the factual
sufficiency of the evidence, Devon and IMC must show that insufficient evidence
supports the trial court’s findings. See Lofton v. Texas Brine Corp, 720 S.W.2d 804,
805 (Tex. 1986); see also M.D. Anderson Hosp. & Tumor Inst. v. Felter, 837 S.W.2d
245, 247 (Tex. App.—Houston [1st Dist.] 1992, no writ) (holding that single standard
applies to factual-sufficiency review, whether affirmative or negative finding
challenged and irrespective of burden of proof at trial). In assessing the factual
sufficiency of the evidence to support the trial court’s express or implied findings, we
must weigh all the evidence, both supporting and conflicting with the finding, and
may set the finding aside only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and manifestly unjust. See Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1986); Arriba, 882 S.W.2d at 582; Felter, 837 S.W.2d at 247. In
reviewing this challenge, we again examine the evidence to determine if some
evidence supports the trial court’s finding, see Lofton, 720 S.W.2d at 805, and, if so,
must then determine, in light of the entire record, whether the finding is so against the
great weight and preponderance of the evidence that the finding is clearly wrong and
manifestly unjust. Cain, 709 S.W.2d at 176; Felter, 837 S.W.2d at 247. In
conducting our review, however, we must be mindful of the factfinder’s role as the
sole determiner of credibility of the witnesses and the weight to give their testimony
and may not substitute our opinion for the factfinder’s solely because we might have
resolved the facts differently. Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988);
Felter, 837 S.W.2d at 247. 
          3.       Discretionary Rulings
          A trial court abuses its discretion when it rules arbitrarily, unreasonably,
without regard to guiding legal principles or without supporting evidence. See
Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex.1998); Dunn v. Dunn, 177 S.W.3d 393,
395 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). The abuse-of-discretion
standard has different applications in different circumstances. See Walker v. Packer 
827 S.W.2d 833, 839 (Tex. 1992). Because a trial court has no discretion in
determining what the law is, which law governs, or how to apply the law, we review
these rulings de novo. See id. at 840. In contrast, when we review a trial court’s
resolution of any facts that may underlie its discretionary rulings, we must defer to
the trial court’s factual resolutions, as well as any credibility determinations that
possibly affected those resolutions, and may not substitute our judgment for its
judgment. See id. Although the legal and factual sufficiency of the evidence are not
independent grounds for asserting error in determining whether the trial court abused
its discretion, they are relevant factors to that inquiry. Dunn, 177 S.W.3d at 396
(citing Lindsey v. Lindsey, 965 S.W.2d 589, 592 (Tex. App.—El Paso 1998, no pet.)).
B.      Unambiguous Interpretation
           Each side of this controversy contends that the September 1990 agreement
unambiguously precludes the interpretation proffered by the opposing side. 
          Devon and IMC emphasize that paragraph 1.B. of the 1990 agreement, which
acknowledges the $50,000 paid to “compensate” First Seismic for the 12.5 percent
interest retained by McKenzie, is the only provision of that agreement that pertains
specifically to the retained McKenzie interest. Because paragraph 1.B. refers
specifically to McKenzie’s retained interest, Devon and IMC contend that paragraph
1.B. not only contrasts with, but also controls over, the language of the indemnity
provisions of paragraph 5.B. Further emphasizing that paragraph 1.B.
“compensate[s]” First Seismic for the McKenzie retained interest, Devon and IMC
argue that taking those specific terms and considering with them paragraph 4.A.,
which recites that the parties exchanged “no additional monies or additional data”
other than the $50,000 referred to in paragraph 1.B., and also with paragraph 6.,
which disclaims “all general and specific warranties,” compels the conclusion that the
$50,000 consideration recited in paragraph 1.B. controls over the indemnity
provisions of paragraph 5.B. Devon and IMC further assert that paragraph 1.B.,
which recites the $50,000 paid to First Seismic for the retained minority interest,
controls to the exclusion of the indemnity provisions of paragraph 5.B., and that
construing the 1990 agreement in its entirety compels an interpretation that the
indemnity provision protected First Seismic solely against claims arising out of the
1990 transfer that First Seismic might assert against Adobe and McMoran.


 
          The arguments presented by Devon and IMC, however, ignore that paragraph
5.B. also refers, specifically, to “the referenced majority owner,” who is undisputedly
McKenzie, “or other owners, should they exist.” We conclude that Devon’s and
IMC’s proposed interpretation of the provisions of the 1990 agreement would render
meaningless the indemnity provisions of paragraph 5.B., which broadly, inclusively,
and without limitation or restriction, warrants not only (1) an indemnity in First
Seismic’s favor, but also (2) to hold First Seismic harmless “for and against any and
all claims, cost, expenses, or causes of action that may be asserted by [McKenzie] or
other owners, should they exist.” (Emphasis added.) J.M. Davidson, Inc., 128
S.W.3d at 229. The broad, inclusive, unlimited, and unrestricted language of 
paragraph 5.B. is irreconcilable, as a matter of law, with the limited circumstances
envisioned by Devon and IMC as triggering its applicability. Nothing in paragraph
5.B. itself, nor the remainder of the 1990 agreement, demands that we reject the broad
grant of indemnity envisioned by paragraph 5.B. and the agreement as a whole.
          On construing the 1990 agreement de novo and as a matter of law and
considering the parties’ varying interpretations, we conclude that First Seismic
properly relied on the indemnity provisions of paragraph 5.B. of the 1990 agreement,
which unambiguously applies and is triggered by the accounting claims, as well as
the costs and the attorney’s fees, adjudicated in the Oklahoma litigation. 
Accordingly, the trial court properly ruled, in its first conclusion of law, that the
claims by the current minority owners adjudicated in the Oklahoma litigation are
“claims or causes of action asserted by the referenced minority owner or other owners
of the East Texas Data that are within the scope and coverage of the Indemnity
Provision.” 
          Given its broad and inclusive language and the lack of the restrictions
suggested by Devon and IMC, we discern no conflict between paragraph 5.B. and
paragraph 1.B., which recites the $50,000 consideration paid to First Seismic by
McMoran for the McKenzie minority interest, nor paragraph 6.’s disclaimers of
additional “monies or additional data” conveyed as consideration for the 1990
agreement. In short, the indemnity provision of paragraph 5.B. that benefitted First
Seismic, like the indemnity provision of paragraph 5.A., which benefitted Adobe and
McMoran, formed part of the bargain to both sides of the transaction that resulted in
their 1990 agreement to exchange their seismic data. 
 

C.      Ambiguity
          Even if the trial court concluded that the 1990 agreement is ambiguous, our
holding would remain the same. The trial court’s findings do not expressly address
the question of the parties’ intent in including, in the agreement, both an
acknowledgment of payment of $50,000 to First Seismic as compensation for the 12.5
percent minority interest that McKenzie retained and, in addition, provisions for (1)
indemnity for the risk that McKenzie or other claimants might assert claims and (2)
disclaimers of warranties by any of the parties to the agreement. To the extent that
the court may have conducted the trial to reconcile possibly perceived inconsistencies
among these provisions, based on the circumstances surrounding negotiations for the
1990 agreement, the record also supports the trial court’s rulings when the record is
viewed in that light. 
          Moreland, First Seismic’s former vice-president and the only witness who
testified at trial court concerning the parties’ negotiations, testified on this issue
without objection.


 Moreland explained that, although the parties’ negotiations did
not initially contemplate indemnity provisions, when Adobe and McMoran
acknowledged their inability to locate the owners of the 12.5 percent interest, First
Seismic required both the $50,000 payment, recited in paragraph 1.B., and the
indemnity provision of paragraph 5.B. The $50,000 payment was included at the
behest of First Seismic’s president, Rogers Beal, and the indemnity provision
recommended by First Seismic’s general counsel, when it became apparent that
McKenzie could not be located to transfer the 12.5 percent minority interest. Devon
and IMC neither rebutted Moreland’s testimony on this issue nor offered testimony
themselves on this issue. 
          Moreover, the record reflects that Devon and IMC filed a stipulation in
response to First Seismic’s pretrial discovery request to depose the corporate
representatives of Adobe and McMoran to respond to inquiries that encompassed the
“fact[s] and circumstances concerning negotiation and execution” of the 1990
agreement and the “intentions of the parties . . . including but not limited to the
intentions with respect to the indemnity language” in paragraph 5.B. and “the
consideration for” the agreement. In the stipulation, representatives of Devon and
IMC stated that, if they were able to locate representatives of Adobe and McMoran,
each representative would state, based on “matters known or reasonably available to
the corporation,” that he “did not know.” 
          The only evidence before the trial court on these inquiries, therefore, was the
testimony of Moreland, First Seismic’s former vice-president, whose uncontroverted
testimony unequivocally established, not only that there was no conflict between
paragraph 1.B. and paragraph 5.B., but that First Seismic expressly required both
provisions. As confirmed by Moreland’s uncontroverted testimony, First Seismic
required both $50,000 in immediate compensation for the acknowledged 12.5 percent
retained minority interest and an indemnity provision in the event of possible future
claims that McKenzie’s known minority interest “or other owners should they exist”
might assert. 
          We conclude that the evidence before the trial court was legally sufficient to
support the findings that support the trial court’s second conclusion of law, which
states that the parties “specifically negotiated the Indemnity Provision and intended
that it cover all claims asserted by any owner of the East Texas Data, including but
not limited to, a claim for accounting for 12.4% of all amounts attributable to sales
and licenses of said data.” See Croucher, 660 S.W.2d at 58; Arriba, 882 S.W.2d at
582. We further conclude that the evidence, which consisted of Moreland’s
uncontroverted testimony, is factually sufficient to support the implicit and express
findings supporting the trial court’s second conclusion of law. See Lofton, 720
S.W.2d at 805; Felter, 837 S.W.2d at 247. 
          To any extent, therefore, that the trial court may have perceived an ambiguity 
in the 1990 agreement and may have conducted the trial on the merits to resolve that
ambiguity, the trial court properly exercised its role as the factfinder in resolving that
issue by crediting the only evidence presented on that issue and, based on that
evidence, properly concluded, as a matter of law, that the 1990 agreement
contemplated and covered the claim that Devon and McMoran indemnify First
Seismic for the accounting claims adjudicated in favor of the current minority owners
in the Oklahoma litigation.
D.      Dresser/Ethyl Rule Does Not Apply

          In their final challenge to the trial court’s interpretation of the September 1990
agreement, Devon and IMC contend that the agreement and, in particular, paragraph
5.B., its indemnity provision, of 1990 agreement, did not adequately provide “fair
notice” to Adobe and McMoran that they had agreed, pursuant to paragraph 5.B., “to
become insurers” of First Seismic against “the consequences of its own wrongful
conduct.” Devon’s and IMC’s arguments evoke the “express negligence” rule, which
they contend, applies “by analogy” to the 1990 agreement. We construe this
argument as challenging the legal sufficiency of the evidence to support the trial
court’s interpretation of the agreement, on the grounds that “the rules of law or
evidence,” specifically, the express-negligence rule, precluded the trial court “from
giving weight to the only evidence offered to prove a vital fact.” See Ramirez, 159
S.W.3d at 903 (citing Havner, 953 S.W.2d at 711).
          The “express negligence” rule, first enunciated in Ethyl Corp. v. Daniels
Constr. Co., 725 S.W.2d 705, 707 (Tex. 1987), applies to “releases and indemnity
clauses in which one party exculpates itself from its own future negligence.” Green
Int’l, Inc. v. Solis, 951 S.W.2d 384, 387 (Tex. 1997) (emphasis added); see also
Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 509–10 (Tex. 1993)
(holding that lack of fair notice renders construction contract unenforceable as matter
of law). As reaffirmed most recently in Solis, the supreme court has consistently
limited application of the express negligence rule to negligence cases. 
          The indemnity provisions of the 1990 agreement at issue here do not attempt
to exculpate First Seismic from its own future negligence, but rather from claims or
causes asserted by the acknowledged, existing 12.5 percent “minority owner or other
owners, should they exist.” Despite the broad language of the provision, the
agreement is limited to claims relating to, or the ownership of, the retained minority
interest, like those here, for which First Seismic sought indemnity from Devon and
IMC, rather than claims for negligence. Because the Ethyl rule does not apply on its
face, the trial court did not err by not extending the rule to this case by analogy to
preclude the trial court’s affording probative effect to the evidence First Seismic
offered in support of its interpretation of the September 1990 agreement.
          We overrule Devon’s and IMC’s first issue.
Challenges to Award of Attorney’s Fees and Costs
          In their second, third, and fourth issues, Devon and IMC challenge the award
of attorney’s fees and expenses to First Seismic for defending the Oklahoma litigation
and the award of attorney’s fees for pursuing its indemnification claim in this
litigation.


 Issues two and three pertain to the award of $237,387.68 in attorney’s
fees and $34,081.94 in expenses incurred in the Oklahoma litigation. In issue two,
Devon and IMC contend that the trial court’s award included fees and expenses that
are not recoverable as a matter of law because they pertain to First Seismic’s defense
of Seitel in the Oklahoma litigation. In issue three, Devon and IMC contend that a
portion of the fees awarded were unreasonable as a matter of law. In issue four,
which pertains to the award of $109,017 in attorney’s fees for pursuing the indemnity
claim in this litigation, Devon and IMC challenge the award on the grounds that it
includes fees that are not recoverable as a matter of law, either because they were
unnecessary or relate to defense of Seitel. 
A.      Standard of Review
          We review legal and factual sufficiency challenges stated in Devon’s and
IMC’s second, third, and fourth issues in accordance with the sufficiency-of-the-evidence standards recited more fully in our analysis of Devon’s and IMC’s first
issue. See Croucher, 660 S.W.2d at 58; Arriba, 882 S.W.2d at 582 (legal
sufficiency); Lofton, 720 S.W.2d at 805; Felter, 837 S.W.2d at 247 (factual
sufficiency).
B.      Principles Governing Attorney’s Fee Awards
          1.       Party Must Prevail.
          A party must establish a basis for recovery of attorney’s fees. See Martin v.
Amerman, 133 S.W.3d 262, 263 (Tex. 2004) (holding that party could not assert
trespass-to-try-title claim as claim for declaratory relief in order to recover attorney’s
fees). Although the judgment here does not specify on what basis the trial court
awarded attorney’s fees, it is undisputed, and the record reflects, that First Seismic
sought recovery of fees pursuant to section 38.001(8) of the Civil Practice and
Remedies Code, which authorizes recovery of reasonable attorney’s fees, in addition
to the amount of damages and costs, when a party prevails in a suit on an oral or
written contract. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon
1987); Solis, 951 S.W.2d at 390 (holding that party must prevail and recover damages
to be entitled to attorney’s fees under section 38.001(8)); Johns v. Ram-Forwarding,
Inc., 29 S.W.3d 635, 637 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (rejecting
contention that parties’ boundary suit governed by Declaratory Judgments Act and
holding that trespass-to-try-title statute controlled claims, which precluded recovery
of attorney’s fees). Paragraph 5.B., the indemnity provision of the September 1990
agreement, the contract that First Seismic sought to enforce, both for defending the
Oklahoma litigation and pursuing this litigation, authorizes recovery of all “costs”
and “expenses.” Having prevailed on its breach of contract claim, by pursuing this
indemnity action and recovering damages, section 38.001(8) entitled First Seismic to
the attorney’s fees, expenses, and costs authorized by paragraph 5.B. of the
September 1990 agreement. 
          2.       Fees and Costs Must be Reasonable and Necessary.
          An attorney’s-fee claimant must also establish that the amount of fees incurred
was both reasonable and necessary to the prosecution of the case, and the factfinder,
in this case the trial court, must award fees in a specific dollar amount and not as a
percentage of the judgment. Arthur Andersen & Co. v. Perry Equip. Corp., 945
S.W.2d 812, 819 (Tex. 1997) The reasonableness of fees and their necessity are
questions of fact. Bocquet, 972 S.W.2d at 20. 
          Reasonableness is the determining factor for attorney’s fees, which are
governed by rule 1.04 of the Rules of Professional Conduct: “A lawyer shall not
enter into an arrangement for, charge, or collect an illegal fee or unconscionable fee
. . .; a fee is unconscionable if a competent lawyer could not form a reasonable belief
that the fee is reasonable.” See Tex. Disciplinary R. Prof’l Conduct 1.04(a),
reprinted in Tex. Gov’t Code Ann., tit. 2, subtit. G app. A (Vernon 1998) [emphasis
added]. In determining whether an award of attorney’s fees is reasonable and
necessary, the trial court is guided by the factors stated in the Rules of Professional
Conduct that govern attorney’s fees. Bocquet, 972 S.W.2d at 20; Arthur Andersen
& Co., 945 S.W.2d at 818-19) (quoting Tex. Disciplinary R. Prof’l Conduct
1.04(b), reprinted in Tex. Gov’t Code Ann., tit. 2, subtit. G app. A); see C.M. Asfahl
Agency, 135 S.W.3d at 802 (applying factors to claims of breach of contract). The
“Andersen-Rule 104(b)” factors are as follows:
(1) the time and labor required, the novelty and difficulty of the
questions involved, and the skill required to perform the legal service
properly;
 
(2) the likelihood . . . that the acceptance of the particular employment
will preclude other employment by the lawyer;
 
(3) the fee customarily charged in the locality for similar legal services;
 
(4) the amount involved and the results obtained;
 
(5) the time limitations imposed by the client or by the circumstances;
 
(6) the nature and length of the professional relationship with the client;
 
(7) the experience, reputation, and ability of the lawyer or lawyers
performing the services; and
 
(8) whether the fee is fixed or contingent on results obtained or
uncertainty of collection before the legal services have been rendered.

Arthur Andersen, 945 S.W.2d at 818; Tex. Disciplinary R. Prof’l Conduct
1.04(b), reprinted in Tex. Gov’t Code Ann., tit. 2, subtit. G app. A; see C.M. Asfahl
Agency, 135 S.W.3d at 802. 
          3.       Nonrecoverable Fees Must be Segregated.
          A party seeking attorney’s fees has a duty to segregate nonrecoverable fees
from recoverable fees and to segregate fees owed by different parties. See Aiello, 941
S.W.2d at 73; Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 11 (Tex.1991). 
Parties may segregate recoverable from nonrecoverable fees and expenses through
estimated percentages of amounts attributable to each. See Flagship Hotel, Ltd. v.
City of Galveston, 117 S.W.3d 552, 566 n.7 (Tex. App.—Texarkana 2003, pet.
denied).
          An exception to the duty to segregate arises when the party incurs attorney’s
fees in connection with claims that depend “upon the same set of facts or
circumstances and thus are intertwined to the point of being inseparable,” in which
case, “the party seeking attorney’s fees may recover the entire amount covering all
claims.” Aiello, 941 S.W.2d at 73 (internal quotations omitted); see Sterling, 822
S.W.2d at 11; Panizo v. Young Men’s Christian Ass’n, 938 S.W.2d 163, 170 (Tex.
App.—Houston [1st Dist.] 1996, no writ). 
C.      Evidence before the Trial Court on Attorney’s Fees and Costs
          James McGraw and Scott Funk, of the Looper Reed & McGraw law firm
(Looper Reed) represented First Seismic in both the Oklahoma litigation and the trial
court. Both demonstrated their experience as seasoned oil and gas practitioners. It
is undisputed that the Oklahoma litigation was protracted through two appeals to the
Tenth Circuit, but then accelerated on remand to the federal district court, with
resulting complications for discovery that had been deferred pending the appeals to
avoid pursuing theories that could prove without merit as a result of the appeals. 
          McGraw’s and Funk’s firm, Looper Reed, retained Lee McLain as counsel to
present their evidence on attorney’s fees at trial. McGraw and Funk testified that it
was necessary, in the Oklahoma litigation, to pursue both the defensive challenge to
the standing of the current minority claimants and First Seismic’s equitable
counterclaims. As first chair in the Oklahoma litigation, McGraw testified
extensively to explain the strategies that resulted in First Seismic’s reducing the
current minority owners’ claimed damages from over $1.2 million to less than
$200,000. Funk clarified, through detailed charts and tables, the actual amounts that
First Seismic sought to recover. Both McGraw and Funk testified in support of the
reasonableness and necessity of the attorney’s fees and expenses First Seismic sought,
and both described their efforts to minimize both fees and expenses by utilizing
paralegals and other alternatives to counsel whenever possible. Both demonstrated
that work on this case precluded their accepting other work. Moreover, questioning
posed to both McGraw and Funk concerning attorney’s fees and expenses and their
responses to those questions reflect concerted effort to demonstrate their compliance
with the Andersen factors listed in rule 1.04(b) of the Disciplinary Rules of
Professional Conduct. 
          Devon and IMC presented Dick Watt as an expert witness to challenge the
attorney’s fees and expenses requested by Looper Reed. Watt, however, was not able
to suggest an alternative, specific calculation of either attorney’s fees or costs for the
Oklahoma litigation. Watt initially challenged the wisdom and utility of pursuing, in
the Oklahoma litigation, whether the current minority owners actually owned the
McKenzie minority interest. Yet, he conceded, under cross-examination, that he
lacked familiarity with Looper Reed’s billing records for the Oklahoma litigation and,
moreover, ultimately yielded that establishing a party’s standing to sue is a “basic”
issue in any lawsuit. Although it is undisputed that the current minority owners
settled their claims against Seitel for only $30,000, Watt nonetheless suggested that
the fees documented in the charts and summaries that Looper Reed offered to
substantiate their fees and expenses be split, in equal proportions of 50 percent each,
between representation of First Seismic and representation of Seitel. 
          Watt ultimately conceded nonetheless that he “had no quarrel with the work”
done in the Oklahoma litigation and acknowledged that he was familiar with the
Looper Reed firm, whom he described as competent attorneys, who kept good time
records and charged a reasonable hourly rate. 
D.      Duty to Segregate Nonrecoverable Fees
          In their second issue and a portion of their fourth issue, Devon and IMC
contend that the trial court erred by awarding attorney’s fees for both the Oklahoma
litigation and this litigation that are attributable solely to defending Seitel. Devon and
IMC argued in the trial court that First Seismic was not entitled to attorney’s fees and
costs attributable to defending Seitel because Seitel was not a party to the September
1990 agreement and because any duties that First Seismic owed to Seitel derived from
the 1994 transaction by which First Seismic transferred its ownership of the seismic
data to Seitel. 
          Yet, the record reflects that, as soon as the trial court deemed these arguments 
persuasive, McGraw and Funk immediately revised, wherever necessary, both their
testimony and the calculations in the charts and tables they offered into evidence. 
Thus, attorney’s fees and costs directly allocable to defense of Seitel were promptly
identified, segregated and noted as nonrecoverable. The record further reflects that,
as both McGraw and Funk testified and were presented with challenges that certain
fees and costs described in their exhibits and testimony included nonrecoverable
items, they responded by proportionately reducing the claimed amounts based on
calculations that represented percentages of time allocable to defense of Seitel. Both
McGraw and Funk excluded from these proportionate reductions, however, fees and
costs that, in their opinions, First Seismic would have incurred in any event because
they related not only to defense of Seitel, but also to defense of First Seismic. 
          Devon and IMC further dispute McGraw’s and Funk’s detailed calculations
and their sometimes slightly differing percentages of reduction for Seitel fees and
expenses. But, calculations need not be disregarded solely because they are
percentages or, alternatively, because McGraw’s and Funk’s percentages may have
differed slightly. See Flagship Hotel, Ltd., 117 S.W.3d at 566 n.7. Devon and IMC
also dispute the extensively detailed testimony and documentary evidence presented
through McGraw and Funk, who not only testified based on their own experience in
both the Oklahoma litigation and this litigation, but also spontaneously revised their
calculations in response to objections that they included nonrecoverable Seitel fees
and expenses. 
          Yet, Devon’s and IMC’s sole counter to McGraw and Funk in the trial court
was through their own expert, Watt. As we have noted, Watt conceded McGraw’s
and Funk’s expertise and his own lack of familiarity with the records of the fees
incurred in the Oklahoma litigation and ultimately yielded that he had “no quarrel”
with those fees. Watt nevertheless offered the unsupported suggestion that an equal,
50 percent split was a more accurate calculation to segregate recoverable from
nonrecoverable fees, simply because, in his opinion, that is the better practice when
clients are represented jointly. Watts did not refute, in any respect, McGraw’s and
Funk’s assertions that they retained certain fees and expenses because they were
integral to defense of First Seismic and, therefore, could not be segregated. See
Aiello, 941 S.W.2d at 73; Sterling, 822 S.W.2d at 11; Panizo, 938 S.W.2d at 170. 
          Ample evidence demonstrates that the trial court awarded only properly
recoverable attorney’s fees and costs in favor of First Seismic, and the evidence is,
therefore, legally sufficient to support the trial court’s judgment. Furthermore,
Devon’s and IMC’s contrary evidence does not so greatly preponderates against the
propriety of the trial court’s awards of properly recoverable attorney’s fees and costs
that the awards are clearly wrong and manifestly unjust. The evidence is, therefore,
factually sufficient to support the trial court’s judgment.
          Accordingly, we overrule Devon’s and IMC’s second issue and the portion of
their fourth issue in which they contend that the trial court awarded fees and costs
attributable to defense of Seitel. 
E.      “Reasonable” and “Necessary” Determinations 
 
          In their third issue and in portions of their fourth issue, Devon and IMC
contend that the trial court awarded attorney’s fees and costs that were either
unreasonable or unnecessary. 
          With respect to the Oklahoma litigation, Devon and IMC argue that the
litigation was “simple” and therefore did not warrant the award of $237,387.68 in
attorney’s fees and $34,081.94 in costs and expenses incurred in that litigation. 
Devon and IMC further contend that time spent by the Looper Reed firm pursuing
claims on which First Seismic did not prevail should be disregarded as
“unproductive.” They cite no authority that supports the latter contention, and we
know of none. We construe these contentions broadly, as challenges to the
sufficiency of the evidence to support the findings of reasonableness and necessity
that underlie the trial court’s thirteenth and fourteenth conclusions of law, which
awarded First Seismic “reasonable, necessary, and customary” attorney’s fees and
“reasonable and necessary” costs incurred in defending the Oklahoma litigation. 
          We conclude that the evidence is legally sufficient to support both the
reasonableness and necessity of the trial court’s awards of attorney’s fees and costs
incurred in the Oklahoma litigation because, as outlined in the summary above,
McGraw and Funk repeatedly tracked the Andersen factors and established the
diligence that resulted in their reducing the current minority owners’ claims from over
$1.2 million in damages to less than $200,000. We further conclude, on reviewing
the factual sufficiency of the evidence, that any controverting evidence offered by
Devon’s and IMC’s expert does not so greatly preponderate against the trial court’s
determinations of the reasonableness and necessity of the fees and costs awarded that
the trial court’s awards of fees and costs incurred in the Oklahoma litigation are
clearly wrong and manifestly unjust. 
          We overrule Devon’s and IMC’s third issue.
          Concerning this litigation, a portion of Devon’s and IMC’s fourth issue
contests the necessity of the attorney’s fees attributable to Looper Reed’s retaining
Lee McLain, an independent counsel employed by their firm, to conduct the direct
examination of McGraw and Funk on the issue of First Seismic’s entitlement to
attorney’s fees and costs. In support of this contention, Devon and IMC suggest, for
the first time on appeal, that McGraw and Funk might have readily conducted direct
examination of each other. Also for the first time on appeal, Devon and IMC dispute
the reasonableness and necessity of “hiring three lawyers to sit through” this litigation
“when two were more than adequate.” Devon and IMC offered no evidence to
contest McLain’s fees in the trial court. Their trial expert, moreover, offered no
opinion that contested the reasonableness or the necessity of hiring McClain for this
litigation. We therefore hold that the trial court did not err in awarding McLain’s
fees. 
          We overrule the portion of Devon’s and IMC’s fourth issue in which they
contend that the trial court awarded fees that were unreasonable or unnecessary. 
Conclusion
          We affirm the judgment of the trial court.
 
     Elsa Alcala
     Justice

Panel consists of Chief Justice Radack and Justices Alcala and Bland.