**M.D. ANDERSON HOSPITAL AND TUMOR INSTITUTE, Appellant,**

v.

**Berylmae FELTER, Appellee.**

No. 01–90–00669–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 6, 1992.

Henry R. Muller, Roy G. Romo, Houston, for appellant.

Dan Morales, Will Pryor, Mary F. Keller, Delmar I. Cain, L. Lynette Phillips, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and WILSON and MIRABAL, JJ.

## OPINION

WILSON, Justice.

In the trial court, appellee, Berylmae Felter, brought a "slip and fall" case under the Texas Tort Claims Act,[1] against appellant, M.D. Anderson Hospital and Tumor Institute. After a jury verdict favorable to Mrs. Felter, the court awarded her a judgment for $100,000, an amount found by the judge to be the maximum allowable under the act at the time the cause of action arose. In three points of error, appellant challenges the evidence supporting the jury's findings. By cross-points, appellee argues the court incorrectly concluded $100,000 was the maximum allowed by law. We affirm the trial court's judgment.

Testimony showed appellee had been spending night and day in her husband's room while he was being treated for cancer. It was undisputed that during her December 13, 1982, "visit" to the hospital, appellee slipped because of water on the floor, and fell, breaking her hip. The incident happened near a bathroom door in the hallway of the hospital floor where her husband was being treated. While appellee was recovering from the fall, her husband died. She did not see her husband alive again after the accident.

The jury answered five questions that included findings that: (1) appellee was an invitee on appellant's premises rather than

---

1. TEX.CIV.PRAC. & REM.CODE ANN. § 101.022 (Vernon 1986).

a licensee; (2) the hospital was liable for negligence; (3) appellee's damages were in the amount of $156,092.71. Appellant asserts under its first point of error that there was no evidence to support the jury's finding that appellee was an invitee on appellant's premises.

■ There are five ways to preserve a "no evidence" point of error: motion for instructed verdict, motion for judgment notwithstanding the verdict, objection to submission of jury question, motion to disregard jury's answer to vital fact question, and a motion for new trial. *Steves Sash & Door Co. v. Ceco Corp.*, 751 S.W.2d 473, 477 (Tex.1988). Even though a motion for new trial was filed, it did not mention the argument appellant now advances. Appellant failed to preserve error.

Accordingly, we overrule appellant's first point of error.

In its second point of error, appellant asserts there is insufficient evidence to support the jury's finding that appellee was an invitee on appellant's premises.

■ Only one standard of review is used in reviewing factual sufficiency challenges, regardless of whether the court of appeals is reviewing a negative or affirmative jury finding or whether the complaining party had the burden of proof on the issue. *M.J. Sheridan & Son v. Seminole Pipeline Co.*, 731 S.W.2d 620, 623 (Tex.App.—Houston [1st Dist.] 1987, no writ). The court of appeals must first examine all of the evidence, *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986), and, having considered and weighed all of the evidence, it should set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Otis Elevator Co. v. Joseph*, 749 S.W.2d 920, 923 (Tex.App.—Houston [1st Dist.] 1988, no writ).

■ Because the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony, *Rego Co. v. Brannon*, 682 S.W.2d 677, 680

(Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), the court of appeals may not substitute its opinion for that of the trier of fact merely because it might have reached a different fact conclusion. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988); *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951); *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

■ Under the Texas Tort Claims Act, to be an invitee on the premises of a governmental unit, payment must be made by the claimant for the use of the premises. *Marshbank v. Austin Bridge Co.*, 669 S.W.2d 129, 133 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Appellant complains about the following jury finding:

Question No. 2

On the occasion in question was Mrs. Felter a licensee or invitee on M.D. Anderson Hospital's premises?

"INVITEE" means a person that pays for the use of the premises.

"LICENSEE" means a person who is on the premises with the permission of the possessor but without an express or implied invitation. Such person is on the premises only because the possessor has allowed such person to enter and not because of any business or contractual relations with, or enticement, allurement, or inducement to enter, by the possessor.

Answer either "INVITEE" or "LICENSEE."

Answer: *Invitee*

The evidence showed that in December 1982, appellee was spending continuous time with her husband in the hospital while his treatment continued. Appellee slept on a sofa bed provided by the hospital in her husband's room. On direct examination, appellee testified as follows:

Q: Mrs. Felter, you and your husband for his stay at M.D. Anderson, you were not indigent patients? He was not an indigent patient there, was he? In other words, you paid for your stay at M.D. Anderson?

A: We did pay for our stay.

On cross-examination, appellee testified:

Q: You didn't pay anything to M.D. Anderson for your stay at the hospital did you?

A: For me?

Q: Yes.

A: No. Just through staying in the room with my husband, whatever—they said I could stay in there with him.

On redirect examination, appellee testified:

Q: Mrs. Felter, you answered this lawyer in response to whether or not you had paid M.D. Anderson for staying there and you said that you didn't.

A: Not for me. Unless it was that I got charged for being in the room with him. I don't know.

Q: Let me ask it again. You testified earlier when I was asking you questions that you paid, you and your husband paid for his hospital stay at M.D. Anderson. Correct?

A: Yes.

Q: All right. Did you have an understanding about whether you could stay there?

A: I asked if I could stay there at night with him and the nurse, somebody said I could.

Q: Okay. So was it your understanding that because you and he were paying for his hospital stay, that you could stay there?

A: I don't know what I thought about that.

Beverly Jean Wood, appellee's daughter testified:

Q: By the way your mother and father were paying for the stay at M.D. Anderson for this period of illness?

A: Yes. . . .

Q: After the death of your father, was his estate probated?

A: Yes, it was.

Q: And did you and your husband assist your mother in making sure all the bills were paid and debts were paid, et cetera?

A: Yes.

Q: And they had a joint checking account which they—you helped write out checks and make sure bills were paid?

A: Yes. I helped mother with her business, even today.

Q: Okay. And that's how you know that—

A: Yes.

Q: —your mother paid for the use of the premises at M.D. Anderson, correct?

A: Yes, that is correct.

While appellee's testimony does indicate some ambivalence concerning whether she paid for the use of M.D. Anderson's facilities, there is some evidence to that effect. The jury decides the credibility of the witnesses and the weight to be given their testimony. The jury resolves conflicts in the testimony of witnesses, and it has the exclusive prerogative to believe part of a witness' testimony or disregard it. *American Home Assur. Co. v. Guevara*, 717 S.W.2d 381, 384 (Tex.App.—San Antonio 1986, no writ). We do not find the jury's finding that appellee was an invitee so against the great weight and preponderance of the evidence as to be manifestly unjust.

We overrule appellant's second point of error.

Appellant asserts in its third point of error that the jury's failure to find Berylmae Felter contributorily negligent was not supported by factually sufficient evidence, and is so against the great weight and preponderance as to be manifestly unjust.

■■■ The burden of the proof is on the defendant to establish contributory negligence. *Safeway Stores, Inc. v. Bozeman*, 394 S.W.2d 532, 538 (Tex.Civ.App.—Tyler 1965, writ ref'd n.r.e.). A failure to find does not have to be supported by affirmative evidence. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973). The standard of review for this point of error is the same as used under point of error two.

■■■ After weighing all the evidence, we do not find that the jury's failure to find appellee negligent is so against the great weight and preponderance of the evidence as to be manifestly unjust. An invitee is under a duty to exercise reasonable care for his own self-protection against dangers of which he knows or ought to

know. *Camp v. J.H. Kirkpatrick Co.*, 250 S.W.2d 413, 417 (Tex.Civ.App.—San Antonio 1952, no writ). There is testimony that appellee knew there was a leak in one of the bathrooms on the day of her fall. Appellee's testimony concerning whether she saw any water on the hallway floor on the day of the accident varies. It varies from answers that she did not see any water, to answers that she does not remember if she saw any water that day. Appellee stated that they were always mopping and cleaning in that area and that "I had seen water before in the morning early when you go there." However, concerning whether she saw water on the hallway floor at the critical time, before she fell, she responded, "No. I wasn't looking down at the floor when I went to that area." There is no evidence that appellee saw water in the hallway and proceeded to walk into it anyway. As a matter of fact, there is evidence that appellee was attempting to be careful to avoid a situation where she would be in water. Appellee testified that she passed the bathroom that had the leak in it, and: "As I reached for the door that leads into the restroom that was all right to go into, no water—I thought—I stepped in some water and slipped in it." There was no testimony that appellee was walking abnormally. There was also testimony that the hallway lights were dimmed. A jury believing appellee's testimony that she had not seen water in the hallway that day could have reasonably inferred that a reasonable and prudent person would not have seen the water as she approached the bathroom doorway. *See, e.g., Safeway Stores, Inc.*, 394 S.W.2d at 535 (evidence found sufficient to support failure to find store customer negligent for failure to maintain lookout where customer testified she was a frequent visitor to the store, had never had any previous trouble walking on the floor, and on the occasion of the subject visit was walking in a normal manner and noticed nothing out of the ordinary); *Weingarten v. Reagan*, 366 S.W.2d 879 (Tex.Civ.App.—

Waco 1963, no writ) (evidence found sufficient to support failure to find store customer negligent in failure to maintain a proper lookout who secured grocery basket, proceeded to the produce department, and was walking across the floor when she slipped on a green bean).

We overrule appellant's third point of error.

■ In her first cross-point, appellee asserts she was denied equal protection of the law as mandated by U.S. Const. amend. XIV, sec. 1 when the trial court entered a judgment limited to the maximum amount as set out in TEX.REV.CIV.STAT.ANN. art. 6252–19, § 3 (Vernon 1964) [repealed effective September 1, 1985]. The appellee's equal protection argument has by implication been rejected in *Tarrant County Hospital Dist. v. Ray*, 712 S.W.2d 271, 273 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.).

■ By supplemental brief, appellee brings a second cross-point premised on the alleged error of the trial court in failing to enter judgment for the full amount.

The Texas Tort Claims Act in effect at the time of the event giving rise to appellee's cause of action [2] set a limit of liability under the act at $100,000 per person.

In 1983, the act was amended raising the State's liability to $250,000. The 1983 amendment specifically provided that a cause of action arising before the effective date of the act would be governed by the law as it existed on the date the act or omission occurred, *Id.* at § 2. The 1985 act repealed the statute without directly saving the provision applying the $100,000 limit to pre-September 1, 1983 causes of action. The recodified version of the statute makes no mention of applying the $100,000 limit to pre-September 1, 1983, causes of action. TEX.CIV.PRAC. & REM.CODE ANN. § 101.023 (Vernon 1992).

---

2. Former TEX.REV.CIV.STAT.ANN. art. 6252–19, sec. 3 (Vernon 1970), act of May 22, 1969, 61st Leg., R.S. ch. 292, § 3, 1969 Tex.Gen.Laws 874, 875, *amended by* Act of June 19, 1983, 68th Leg. R.S., ch. 530, § 1, 1983 Tex.Gen.Laws 3084, 3084–85

(the 1983 amendment), *repealed by* Act of June 16, 1985, 68th Leg. R.S., ch. 959, § 9, 1985 Tex.Gen.Laws 3242, 3322 (the 1985 amendment) (recodified at Tex.Civ.Prac. & Rem.Code, § 101.-023 (Vernon 1986)).

The Code Construction Act, Tex.Gov't Code Ann. § 311.022 (Vernon 1988), is applicable to "each provision in this code, except as otherwise expressly provided by this code." Tex.Civ.Prac. & Rem.Code Ann. § 1.002 (Vernon 1986). We conclude the Code Construction Act applies to the "Texas Tort Claims Act," Tex.Civ.Prac. & Rem. Code Ann. § 101.001 et seq. (Vernon 1992).

The Code Construction Act states in pertinent part:

> In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the:
>
> . . . . .
>
> (7) title (caption), preamble and emergency provision.

Tex.Gov't Code Ann. § 311.023 (Vernon 1988).

The Texas Civil Practice and Remedies Code was Senate Bill 797 in the 69th Legislature at ch. 959, 1985 Tex.Gen.Laws 3242–3322. The title to Senate Bill 797 states:

> An act relating to adoption of a nonsubstantive revision of the statutes relating to civil procedure and civil remedies and liabilities; making conforming amendments and repeals; providing penalties.

Additionally, § 10 of Senate Bill 797, ch. 959, 1985 Tex.Gen.Laws 3242, 3322 states:

> Legislative Intent. This act is enacted pursuant to Article III, Section 43, of the Texas Constitution. This Act is intended as a recodification only, and no substantive change in the law is intended by this Act.

The Code Construction Act in section 311.031 states in pertinent part:

> (a) Except as provided by Subsection (b), the reenactment, revision, amendment, or repeal of a statute does not affect:
> (1) the prior operation of the statute or any prior action taken under it;
> (2) any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred under it. . . .

Tex.Gov't Code Ann. § 311.031 (Vernon 1988).

This section permits appellee to continue with her cause of action pursuant to the prior operation of the statute. In appellee's case, the prior statute was Tex.Rev. Civ.Stat.Ann. art. 6252–19 § 3 (Vernon 1970) amended by Act of June 19, 1983, ch. 530, § 1, 1983 Tex.Gen.Laws 3084, 3084–3085 which placed the limit on the State's liability at $100,000.

The Code Construction Act, Tex.Gov't Code Ann. § 311.022 (Vernon 1988), specifically states that a statute is presumed to be prospective in its operation unless expressly made retrospective. The Texas Civil Practice and Remedies Code does not contain a general retrospective provision. Appellee's cause of action arose on December 13, 1982. The case was not tried until eight years later in 1990. The Texas Tort Claims Act in effect in 1982 set a limit of liability under the Act at $100,000 per person.

The acts giving rise to appellee's cause of action occurred on December 13, 1982, when appellee fell on appellant's premises. Appellee's cause of action did not arise in 1990, when the case was finally tried to a jury. The prospective nature of the Texas Civil Practice and Remedies Code and the application of the Code Construction Act preclude application of the $250,000 limit to appellee's judgment

We overrule appellee's cross-points.

We affirm the judgment of the trial court.