Opinion issued May 25, 2006







In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00034-CV




ROBERT R. LONG d/b/a MWT, Appellant

V.

UNITED WELDING SUPPLY, INC., Appellee




On Appeal from County Civil Court at Law No. 1
Harris County, Texas
Trial Court Cause No. 727,682




CORRECTED MEMORANDUM OPINION ON REHEARING

          Appellant, Robert R. Long d/b/a MWT, moved for rehearing en banc of our
memorandum opinion of July 15, 2004. See Tex. R. App. P. 49.7. Appellee, United
Welding Supply, Inc. (United) filed a response to the motion. We grant the motion
for rehearing, withdraw our opinion and judgment of July 15, 2004, and issue this
opinion and accompanying judgment in their stead.



          United filed this lawsuit to recover a $4,274.02 unpaid balance for welding
supplies and services provided to a business called Material Welding Technology
(MWT), which United contends was owned or partly owned by Robert R. Long
(Long). Long appeals from a judgment against “ROBERT R. LONG d/b/a MWT” in
favor of United that ordered awards for (1) $4,272.02 in actual damages plus
prejudgment and postjudgment interest on that sum, (2) $30,000 in exemplary
damages, (3) $45,000.00 as sanctions for conduct that occurred pretrial and during
trial, and (4) attorney’s fees for trial, contingent attorney’s fees for appeal, and costs
of court.
          In ten issues, Long challenges the jury’s answers to 10 jury questions by
asserting that (1) as to jury questions numbered one, two, three, four, six, and eight
the evidence is legally and factually insufficient to support the jury’s answers, and (2)
as to the remaining jury questions numbered five, seven, nine and 10, the jury’s
answers are immaterial and cannot support the judgment. In issues 11 and 12, Long
challenges the $45,000 sanctions award imposed by the trial court against him by
asserting that United’s motion for sanctions was untimely and that the trial court
abused its discretion by imposing the award against him. 
          We conclude that the evidence is legally and factually sufficient to establish
that Long, doing business as MWT, breached the contract with United and committed
fraud against United. We therefore overrule issue numbers one, two, seven and nine. 
We overrule issues three, four, five, six, eight, and 10 because those issues are
contingent on our resolution of other appellate issues. We also conclude that United
waived its right to assert its motion for sanctions for Long’s production of falsified
documents during pretrial discovery because the record shows that United was aware
of the conduct before trial, did not file a motion for sanctions for that conduct prior
to trial, and did not obtain a ruling on that conduct prior to trial. However, because
the trial court’s judgment imposing sanctions is also premised in part on conduct that
occurred after the commencement of trial, we reverse the sanctions award for
redetermination of the amount, taking into consideration misconduct that occurred
after the commencement of trial and evaluated in light of the jury’s assessment of
punitive damages against Long. We therefore sustain Long’s issue 11 and, in part,
12. We affirm the judgment in all other respects.
Background
          Carolyn Johnson is the president and owner of United, a company that was
founded by her father over 25 years ago. In February 1999, Long applied for credit
from United for the Randall Long Corporation (the Corporation), and United opened
an account on credit for the Corporation. About two months later, United received
a faxed application for credit from MWT on a preprinted form that was not filled out
or signed by anyone. Credit was not extended to MWT. 
          Although United extended credit to the Corporation only, early sales by United
of products and services were paid for by the Corporation and MWT. Later sales to
MWT totaling $4,274.02 went unpaid. The record includes invoices for sales of
products and services to MWT that occurred on the following dates: March 19, 22,
and 23, 1999; April 19, 22, 23, 26, 27, 28, and 29, 1999; May 3, 1999; June 10 and
30, 1999; July 31, 1999; August 31, 1999; and September 17, 1999. The invoices
show sales to MWT at the location 10440 Windfern in Houston, Texas. The sales to
the Corporation were also sent to the same address on Windfern.Johnson acknowledged receiving a series of letters from Long, who identified
himself as President of the Corporation, that informed United that, after April 1, 1999,
the Corporation would no longer pay MWT’s bills because William Sprayberry and
David Watmough “have since taken MWT as their sole company.” Long also
informed United that although the Corporation “has paid over $30,000 in MWT bills
to United,” the Corporation would not be responsible for any other bills. Long
further told United to send MWT’s bills only to Watmough or Sprayberry at their
home addresses and to discontinue sending MWT’s bills to the Corporation or to
Long. Long also refused to return property that belonged to United unless United
gave him a personal release of liability for the MWT debt.


 In Johnson’s opinion,
Long was holding her property for ransom unless United released him from any
personal liability for the MWT debt.
          Johnson filed suit against Long for the debt owed by MWT to United, and the
case was set for trial. Over the course of approximately a year while the case was
pending, Long, in response to discovery requests, produced five or six documents of
communication between him and United. Just before the second trial setting and
shortly before mediation, Long produced approximately 18 documents of
correspondence that he purported had been exchanged between them. Long gave that
correspondence to his attorney, who tendered copies of the correspondence to
United’s attorney, in accordance with prior discovery requests for such matters. 
          Johnson believed that the 18 documents produced at the last minute by Long
were “fake” because, according to Johnson, the events described in the letters never
took place, and the letters were inconsistent with her manner of doing business. The
“fake” letters produced by Long purportedly documented the following:•United agreed to bill items ordered by Sprayberry to MWT, and
United agreed that Long and the Corporation would not be “in
any way responsible for these items ordered by Sprayberry or his
partner David Watmough.”
 
•Johnson was aware that Long was not part of MWT before any
sales to MWT ever occurred and knew that the Corporation and
Long should not be billed for any MWT purchases.
 
•Johnson represented to Long that United would “hold you
harmless” for Sprayberry’s and Watmough’s debts.
 
•Johnson believed that Sprayberry and Watmough were “playing
games with” United and the Corporation, and United thus decided
not to accept any more orders from MWT or the Corporation.
 
•United would send a refund check to Long for payments he
erroneously made on behalf of MWT.
 
•Long would be “forced to resort to legal means” if he did not
receive the refund from United.
 
          •        Long would sell United’s empty gas cylinders “at auction to the highest
bidder” if United did not pick them up.

          Johnson testified that she did not see these letters until less than a month before
the case was set for trial the second time. In explaining reasons why she believed
these letters produced by Long were forgeries, Johnson stated that she did not use that
format on her letters at that time, the fax number listed on the letters was not the one
that she used for her correspondence, the language and content of the letters
purportedly sent by her contained information that she would never put into a letter
to a client and used language that she would not use, and the contents of the letters
were not consistent with her recollection of events. Johnson further relayed that she
never discussed any reimbursement check with Long, never told Long that he would
not be billed for MWT purchases, and that MWT never had an account on credit with
United.
          Believing that the correspondence was forged, United’s attorney requested a
court order requiring Long to tender the original correspondence documents to the
court to be examined because United’s attorney had only copies, not originals, of the
correspondence documents that Long had produced around the time of mediation.


 
The court, however, by agreement of the parties, ordered that Long tender the original
correspondence, which United believed to be forged, to the custody of United’s
attorney. These correspondence documents, later identified as Exhibit 38, were kept
in the file cabinet of United’s attorney, except for two occasions when an employee
of Long’s attorney transported the documents to United’s document examiner, waited
with the documents while they were examined, and then transported the documents
back to United’s attorney’s office. Janet Masson, United’s forensic document
examiner, examined the documents identified as Exhibit 38 and concluded that they
were not authentic. In its case in chief, United offered and the court admitted Exhibit
38, that consisted of the documents that United’s attorney represented were Long’s
originals of the “fake” correspondence between Long and United. 
          At trial, David Watmough testified that he was “involved” in MWT, but was 
never “officially” a partner with Long and that they “never had an agreement.” 
Watmough stated that Long was “doing business as MWT” and that Long “did
business as MWT with United Welding.” Watmough further testified that Long
presented him with a proposed partnership agreement for MWT, but Watmough never
agreed to it or signed it. Watmough declined to sign the partnership agreement
because it called for a monetary investment by Watmough, in contrast with his and
Long’s discussions that Long would take care of the money, Watmough would take
care of technical aspects, and Sprayberry would solicit business. According to
Watmough, Long alone was to pay MWT’s bills. Watmough was asked, “This
$30,000 that he paid for MWT bills are exactly what he owed and promised you and
Sprayberry that he was going to pay for; didn’t he?” Watmough replied, “If that was
the total deal - the deal was he was going to go ahead and pay for materials and
labor.” When Watmough was further asked, “Do you know of any reason why Robert
Randall Long doesn’t owe United Welding the sum of $4,274.02?,” he replied, “No,
I don’t know any reason why he would not owe that money.” Watmough explained
that when he was contacted by United about the MWT debt, he refused to pay the
debt because he did not purchase or use the goods in question.
          Steve Kamel testified as to an extraneous matter, explaining that he had been
Long’s attorney for an unrelated matter that involved a complaint about a vehicle that
Long had purchased. Kamel sued Long for approximately $6500 for his refusal to
pay Kamel’s legal fees. Kamel testified that shortly before their second trial setting,
Long produced to Kamel a number of falsified documents. According to Kamel,
Long recreated letterhead and forged Kamel’s signature on a series of documents that
purported that Kamel had made a billing error, and that Kamel would issue a
reimbursement check to Long for amounts that Kamel owed to Long.
          The defense presented four witnesses at trial. Long denied that he had ever
been a partner of MWT, that he prepared a proposed temporary partnership agreement
or any other partnership agreement concerning MWT, that he did business as MWT,
and that he owed the MWT debt. Long asserted that he accidentally paid some bills
from United that were charged to MWT with the Corporation funds because the bills
got mixed up together when Sprayberry worked for the Corporation. Long also stated
that on another occasion, he paid $24,702.50 to United for a manipulator that was
ordered by MWT and delivered to his shop because he thought that he might be able
to use it in his work. Long stated that when he wrote to Johnson stating that
Watmough and Sprayberry had “since taken MWT as their sole company,” he told her
that to make “sure that she was aware of that so if she had any credit out to them she
could protect herself.” According to Long, the person from whom Watmough and
Sprayberry had taken MWT was named Viscek, whose first name was unknown. 
During cross-examination, however, Long acknowledged that there was no reference
in any correspondence between him and United to any person named Viscek and that
Viscek was never mentioned in Long’s discovery responses that requested the
disclosure of any person with knowledge of the case.
          At trial, Long disputed that the documents in Exhibit 38 were his originals,
suggesting that his original documents had been replaced with other documents, and
thus implying that United’s attorney or someone else had substituted these other
documents in place of his originals. Long explained that he knew that the documents
in Exhibit 38 were not his originals because he marked his original documents with
a “permanent marker where you can make identifying marks that are only detectable
by ultraviolet light” and the documents in Exhibit 38 did not have the marks when he
“black light tested the documents.” Long also explained that all but one of the
documents in Exhibit 38 were signed with black ink and that for the past five years
he signed his correspondence with blue ink only.


 Long said that the signature on the
single document in Exhibit 38, dated January 20, 1999, that was signed in blue ink
on the document “looks like” his signature, although that document did not have the
ultraviolet markings on it. During cross-examination, Long acknowledged that it
appeared to be his signature on the copies of the documents that were tendered to
United’s attorney at the mediation, which are exact duplicates of the original
documents in Exhibit 38.
          United’s attorney objected to Long’s testimony on the grounds that Long had
not disclosed prior to trial, as requested in discovery, that he believed the documents
in Exhibit 38 were not his documents. United’s attorney argued to the court that
“[t]here has never been an allegation in this matter before today when he was on the
stand that these documents are fake and that anybody manipulated any of these
documents.” The trial court, however, allowed Long to testify about his beliefs that
his original correspondence was not what was marked as Exhibit 38.
          Other witnesses testified briefly for the defense. Kendall Jaegar testified that
he was the certified public accountant who handled Long’s personal and corporate
matters and that he had never heard of a company called MWT. Loyce Boullion,
Long’s wife, testified that she had never heard of MWT until after the lawsuit was
filed by United and that if Long had stated he was thinking about forming a
partnership, she would have referred him to an attorney that specializes in that type
of work. George Bost testified that he was employed by Long at the Corporation and
assisted Long in videotaping documents that had been marked with the ultraviolet
marker. 
Standards of Review
          In assessing Long’s challenge to the legal sufficiency of the evidence to
support the jury’s findings of breach of contract and fraud, we must determine
“whether the evidence at trial would enable reasonable and fair-minded people to
reach the verdict under review.” City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.
2005). Legal-sufficiency review in the proper light must credit favorable evidence
if reasonable jurors could, and disregard contrary evidence unless reasonable jurors
could not. Id. If the evidence would enable reasonable and fair-minded people to
differ in their conclusions, then jurors must be allowed to do so. Id. at 822. A
reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as
the evidence falls within this zone of reasonable disagreement. Id. Although the
reviewing court must “consider evidence in the light most favorable to the judgment,
and indulge every reasonable inference that would support it[,] . . . if the evidence
allows of only one inference, neither jurors nor the reviewing court may disregard it.” 
Id. A legal sufficiency point must be sustained (1) when there is a complete absence
of a vital fact; (2) when rules of law or evidence preclude according weight to the
only evidence offered to prove a vital fact; (3) when the evidence offered to prove a
vital fact is no more than a scintilla; or (4) when the evidence conclusively establishes
the opposite of the vital fact. Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706,
711 (Tex. 1997). 
          In assessing Long’s challenge to the factual sufficiency of the evidence to
support the jury’s findings of breach of contract and fraud, we must weigh all the
evidence, both supporting and conflicting with the finding, and may set aside the
finding only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and manifestly unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986); Comm’n of Contracts v. Arriba Ltd., 882 S.W.2d 576, 582 (Tex.
App.—Houston [1st Dist.] 1994, no writ). In reviewing this challenge, we first
examine all the evidence to determine if some evidence supports the trial court’s
finding, see Lofton v. Tex. Brine Corp., 720 S.W.2d 804, 805 (Tex. 1986), and, if so,
then determine, in light of the entire record, whether the finding is so against the great
weight and preponderance of the evidence that the finding is clearly wrong and
manifestly unjust. Cain, 709 S.W.2d at 176; M.D. Anderson Hosp. & Tumor Inst. v.
Felter, 837 S.W.2d 245, 247 (Tex. App.—Houston [1st Dist.] 1992, no writ). In
conducting our review, however, we must be mindful of the fact finder’s role as the
sole determiner of credibility of the witnesses and the weight to give their testimony
and may not substitute our opinion for the fact finder’s solely because we might have
resolved the facts differently. Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988);
Felter, 837 S.W.2d at 247.
Breach of Contract
          In his first two issues, Long asserts that the trial court erred by awarding
judgment for breach of contract because the evidence is legally and factually
insufficient to support the jury’s affirmative answers in response to jury questions one
and two. The jury answered “yes” to jury questions numbers one and two that asked,
respectively, “Did Robert R. Long and United Welding Supplies, Inc., enter into an
agreement that United Welding Supplies, Inc. would supply goods and services to
Robert R. Long and that Robert R. Long would pay for those services?” and “Did
Robert R. Long fail to comply with his agreement, if any, with United Welding
Supplies, Inc.?” 
          We begin by examining the scope of Long’s complaint in this appeal. 
Excluding the legal authority for the standard of review for legal and factual
sufficiency of the evidence, Long’s entire appellate brief consisted of one and a half
pages of argument that pertained to all of his first 10 appellate issues.


 Long’s reply
brief, entitled “Pre-Submission Brief,” filed on the day that this case was submitted
for decision but after its submission, clarified his appellate points asserted in his
initial brief. Long’s reply brief explained, 
This case has never been about whether or not MWT owed $4,274.02 to
United. That issue has never been disputed. The primary issue in this
case is whether Robert R. Long himself and individually committed the
wrongful conduct inquired about in Jury Questions Nos. 1 through 8 .
. . None of the evidence pointed out by United in its Brief of Appellee
establishes that Robert R. Long himself did any of the wrongful conduct
that was attributed to him by the Jury. That is why the factual and legal
sufficiency challenges contained in the Brief of Appellant were asserted.

(Emphasis in original).



          The elements of a breach of contract claim are (1) the existence of a valid
contract between plaintiff and defendant, (2) the plaintiff’s performance or tender of
performance, (3) the defendant’s breach of the contract, and (4) the plaintiff’s damage
as a result of the breach. Prime Prods., Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631,
636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). Long does not dispute that
United performed or tendered performance and that United suffered damage as a
result of the breach. See id. Similarly, Long does not dispute that there is a valid
contract between MWT and United, nor does he dispute that MWT breached the
contract with United, but he asserts only that he did not do business as MWT and
could not therefore be held individually accountable for actions taken by MWT.
          We begin by noting that Texas law has long recognized that when, as here, a
judgment is rendered against an individual doing business as an unincorporated
association, that judgment is binding on the individual. See Old Republic Ins. Co. v.
EX-IM Servs. Corp., 920 S.W.2d 393, 396 (Tex. App.—Houston [1st Dist.] 1996, no
writ); Holberg & Co. v. Citizens Nat. Assurance Co., 856 S.W.2d 515, 517 (Tex.
App.—Houston [1st Dist.] 1993, no writ); Tex. Rev. Civ. Stat. Ann. art. 6135
(Vernon 1970); Tex. R. Civ. P. 28. The record here shows that the only objections
posed to the jury charge by Long were to the sufficiency of the evidence to submit the
questions. Long did not object to the jury charge on the grounds that it inquired
about him individually, nor did he object to the judgment in the trial court, which is
imposed against “Robert R. Long d/b/a MWT.” 
          The jury in this case was presented with legally and factually sufficient
evidence to establish that Long was responsible for the MWT debt to United. Direct
evidence established that Long was doing business as MWT. Johnson testified that
Long did business as MWT and that Long was responsible for paying the MWT debt
due to United. Watmough stated that Long was “doing business as MWT,” Long “did
business as MWT with United Welding,” and Long alone was responsible for any
bills charged to MWT. Watmough denied that he was responsible for the MWT debt
because he did not purchase or use the goods in question.
          Furthermore, the record demonstrates that Long implicitly acknowledged that
he was personally responsible for the MWT debt owed to United. In two letters that
Johnson received from Long, Long offered to give Johnson access to her property
only if she would personally release him, “Robert R. Long,” from the liability for the
MWT debt owed to United. The September 1999 letters stated that United needed to
provide a “release from liability for all debts of MWT for Robert R. Long.” We
conclude that the jury could reasonably have inferred that Long believed he was
liable for MWT’s debt to United, given that he was requiring a release of that
liability.
          The record further demonstrates that when the parties were in anticipation of
mediation, Long produced falsified letters that purported to hold him personally
harmless for the debt. The jury could infer, from this evidence, that Long believed
that he was personally responsible for the debt to United, and thus falsified
correspondence in an attempt to avoid responsibility for his debt as MWT. 
          Long’s defense at trial consisted of his testimony that he was not a part of
MWT, that a person with the last name of Viscek was the third partner in MWT, and
that the records that the court possessed were not his original documents. 
Additionally, Long’s wife and accountant testified that they had not heard of MWT
until after the lawsuit was filed. The jury was within its discretion to find Long’s
defense that he never did business as MWT not credible because (1) Long’s letters
to United stated that Watmough and Sprayberry “have since” taken MWT, thus
acknowledging that before April 1999, Watmough and Sprayberry did not own MWT,
(2) MWT’s business and the Corporation carried the same address, (3) Long paid for
some MWT bills with the Corporation funds, (4) Long’s claim that a person named
Viscek was the third partner in MWT was incredible given that Long never
mentioned the name of Viscek in any of his correspondence to United and never
mentioned the name of Viscek in any of the discovery responses that requested the
identity of witnesses prior to trial, (5) Long implicitly acknowledged his
responsibility for the MWT debt by demanding a release of personal liability in
exchange for the cylinders that belonged to United, (6) Johnson’s testimony
established that Long falsified documents that purported to establish that he was not
personally liable for the MWT debt, and (7) Watmough testified that Long did
business as MWT with United and that Long was responsible for the MWT goods and
services that were purchased from United.
          Viewing the evidence for legal sufficiency in the light most favorable to the
jury’s findings, we conclude that the evidence is legally sufficient to show that Robert
R. Long did business as MWT and was responsible for the actions of MWT in
breaching the contract with United. In conducting a neutral review of all the evidence
for factual sufficiency, both evidence tending to support and tending to negate the
jury’s findings, we conclude that the record demonstrates that Robert R. Long did
business as MWT and was responsible for the actions of MWT in breaching the
contract with United, and that the opposing evidence does not so greatly preponderate
against the evidence supporting the jury’s findings as to demonstrate that they are
clearly wrong and manifestly unjust.
          We overrule Long’s first and second issues.
Promissory Estoppel
          In his third issue, Long asserts that the evidence is legally and factually
insufficient to support the jury’s affirmative answer in response to jury question
number three that asked whether United substantially relied to its detriment on Long’s
promise, if any, and whether the reliance was foreseeable by Long. Question number
three asked, “Did United Welding Supplies, Inc. substantially rely to its detriment on
Robert R. Long’s promise, if any, and was this reliance foreseeable by Robert R.
Long?” The jury answered “yes.”


 Because we hold that the evidence is legally and
factually sufficient to establish that Long breached the contract with United, we need
not address whether the evidence is legally and factually sufficient to establish that
United was entitled to recover under the alternate theory of promissory estoppel. See
Allied Vista, Inc. v. Holt, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.]
1999, pet. denied) (stating promissory estoppel is generally viable alternative to
breach of contract); Doctors Hospital 1997, L.P. v. Sambuca Houston, L.P., 154
S.W.3d 634 (Tex. App.—Houston [14th Dist.] 2004, pet. abated) (stating that when
party recovers on promissory estoppel claim, it does not have valid contract claim).
          We overrule Long’s third issue.
Quantum Meruit
          In his fourth and fifth issues, which concern the jury’s affirmative answer to
question number four, Long asserts that the evidence is legally and factually
insufficient to establish that Long “accepted and used” the services rendered or
materials furnished and that the jury’s answer is immaterial and cannot support a
judgment based upon the jury’s affirmative answer to it. Jury question number four
asks, 
Did United Welding Supplies, Inc. perform compensable work for
Robert R. Long? One party performs compensable work if valuable
services are rendered or materials furnished for another party who
knowingly accepts and uses them and if the party accepting them should
know that the performing party expects to be paid for the work.

The jury answered “yes.”


 Because we hold that the evidence is legally and factually
sufficient to establish that Long breached the contract with United, we need not
address whether the evidence is legally and factually sufficient to establish that
United was entitled to recover under the alternate theory of quantum meruit. See
Vortt Exploration Co. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990)
(stating “A party may recover under quantum meruit only when there is no express
contract). 
          We overrule Long’s fourth and fifth issues.
Actual Damages
          In his sixth issue, Long asserts that the jury’s answer to question number five
is immaterial and cannot support a judgment if this court sustains Long’s attacks on
the jury’s first, second, third, and fourth findings. Jury question number five was
predicated on the Jury’s answering “Yes” to any of the jury questions numbered two,
three, or four, which are described in detail above, and asked, “What sum of money,
if any, if now paid in cash, would fairly and reasonably compensate United Welding
Supplies, Inc. for its damages, if any, that resulted from Robert R. Long’s failure to
comply with the agreement with United Welding Supplies, Inc.?” The jury answered
“4,274.02.” Long’s sixth issue is predicted on our sustaining his issues one, two,
three, or four, which we have not sustained. 
We overrule Long’s sixth issue.
Fraud and Fraud with Malice
          Long’s seventh issue complains that, concerning the jury’s affirmative answer
to question number six, the evidence is legally and factually insufficient to show that
Long made a material misrepresentation, that Long had any intent that United rely
upon any such representation, and that United acted in reliance upon any such
representation. Long’s ninth issue asserts that the evidence is legally and factually
insufficient to support the jury’s affirmative answer to the fraud with malice jury
question, which was jury question number eight. 
          Jury questions six and eight pertained to United’s claims for fraud and fraud
with malice. The jury answered “yes” to jury question number six, which stated:
Did Robert R. Long commit fraud against United Welding Supplies,
Inc.? Fraud occurs when - - 
a. a party makes a material misrepresentation.
b. the misrepresentation is made with knowledge of its falsity or made
recklessly without any knowledge of the truth as a positive assertion,
c. the misrepresentation is made with the intention that it should be
acted on by the other party, and 
d. the other party acts in reliance on the misrepresentation and thereby
suffers injury. 
 
“Misrepresentation” means a promise of future performance with an
intent, at the time the promise was made, not to perform as promised.
          The jury also answered “yes” to jury question number eight. It states, as 
follows:
Do you find by clear and convincing evidence that the harm to United
Welding Supplies, Inc. resulted from fraud with malice?
 
“Clear and convincing evidence” means the measure or degree of proof
that produces a firm belief or conviction of the truth of the allegations
sought to be established. 
 
“Malice” means:
(a) a specific intent by Robert R. Long to cause substantial injury to
United Welding Supplies, Inc.; or 
(b) an act or omission by Robert R. Long, 
(i) which, when viewed objectively from the standpoint of Robert
R. Long at the time of its occurrence, involved an extreme degree
of risk, considering the probability and magnitude of the potential
harm to others; and
(ii) of which Robert R. Long had actual, subjective awareness of
the risk involved, but nevertheless proceeded with conscious
indifference to the rights, safety, or welfare of others. 
          A promise to do an act in the future is actionable fraud when made with the
intention, design and purpose of deceiving and with no intention of performing the
act. Formosa Plastics Corp. v. Presidio Eng’rs & Contractors, Inc., 960 S.W.2d 41,
46 (Tex. 1998). Failing to perform a contract, standing alone, is not evidence of
intent on the promisor’s part, at the time of making the promise, not to perform as
promised. See id. at 48. As a general rule, the failure to perform the terms of a
contract is a breach of contract, not a tort. CrimTruck & Tractor Co. v. Navistar Int’l
Transp. Corp., 823 S.W.2d 591, 597 (Tex. 1992). Thus, to prove fraud, a plaintiff
must present evidence that is “relevant to [the defendant’s] intent at the time the
representation is made.” Formosa, 960 S.W.2d at 48.
          As explained in more detail above under the breach of contract section, Long
presents a single assertion concerning why the evidence is insufficient to establish
fraud and fraud with malice. In his reply brief, Long phrases his complaint about the
fraud issues as follows:
          Turning to the issue of fraud, each species of Fraud inquired about in the
court’s charge requires the making of a misrepresentation. United
admits in its brief that ‘United’s fraud claim focuses on Long’s false
representations that he would pay for the goods furnished.’ But there
exists one fatal flaw in United’s position, the record contains no
evidence that Robert R. Long made a false representation of material
fact.

Long does not dispute that MWT committed fraud upon United or that United was
owed $4,274.02 for unpaid goods and services. We therefore address only Long’s
complaint concerning the lack of evidence that he personally made a false
representation of material fact. 
          The record shows that MWT had possession of cylinders belonging to United
at Long’s business address on Windfern street and that Long refused to allow United
to regain possession of those cylinders unless United waived the opportunity to seek
legal recourse against Long personally for the MWT debt. Additionally, Long
created false documents of correspondence that never existed between himself and
United, which purported to establish that United owed money to Long for erroneously
billing Long for the MWT account. In a similar pattern of deception, before
requesting goods and services from United, Long had accepted services from an
attorney, refused to pay for those services, and then created false documents that
purported to show that Long did not owe money to the attorney. The jury could
reasonably infer from this evidence that Long materially misrepresented to United an
intent to pay for goods and services with a present intent not to pay for them and
made that misrepresentation with knowledge of its falsity, much like he did not pay
for the legal services rendered by Kamel. The circumstantial evidence of acts that
occurred before and after Long’s refusal to pay for the goods and services is sufficient
to show that Long was doing business as MWT, Long engaged in a pattern of
deception, and Long had fraudulent intent and no intention of ever paying for the
goods when he ordered them. See Formosa, 960 S.W.2d at 48–49.
          Moreover, as noted above, Long did not object to the jury charge on the
grounds that it inquired about him individually or to the judgment in the trial court,
which is imposed against “Robert R. Long d/b/a MWT.” The judgment is binding on
him individually because it is rendered against him individually doing business as an
unincorporated association. See Old Republic Ins. Co., 920 S.W.2d at 396. 
          Viewing the evidence for legal sufficiency in the light most favorable to the
jury’s findings, we conclude that the evidence is legally sufficient to show that Robert
R. Long committed fraud. In our neutral review of all the evidence for factual
sufficiency, both evidence tending to support and tending to negate the jury’s
findings, we conclude that evidence in the record demonstrates that Long committed
the fraud and that the opposing evidence does not so greatly preponderate against the
evidence supporting the jury’s findings as to demonstrate that they are clearly wrong
and manifestly unjust.
          We overrule Long’s seventh and ninth issues.
Damages for Fraud, Exemplary Damages and Attorneys Fees
          In his eighth issue, Long contends that the evidence is legally and factually
insufficient to support the jury’s findings in response to jury question number seven
that Long committed fraud which resulted in damages of $4,274.02 to United.


 Jury
question number seven was predicated on a “yes” answer to jury question number six. 
Long’s complaint asserts that his eighth issue is contingent on our sustaining the
jury’s other findings, which we have not sustained. 
          We overrule Long’s eighth issue. 
          In his tenth issue, Long states, “As a result of this Court’s disposition of the
previous issues on appeal, the trial court’s award of attorney’s fees, exemplary
damages, and prejudgment and post judgment interest and costs of court cannot
stand.” Jury question number 10, which concerned exemplary damages,


 was
predicated on an affirmative response to jury question number eight. In jury question
number nine, the jury determined that United was entitled to reasonable attorney’s
fees.



          As set forth above, Long predicated his tenth issue on appeal only on our
sustaining his issues described above, which we have not sustained. He did not assert
any independent challenge to the judgment or the jury’s findings. For example, Long
has not asserted a complaint on appeal that the trial court’s judgment awards both
exemplary damages and attorney’s fees and thus reflects that no election of remedies
was made. We note that a plaintiff may not recover exemplary damages for a breach
of contract. See Amoco Production Co. v. Alexander, 622 S.W.2d 563, 571 (Tex.
1981). Likewise, a plaintiff generally may not recover attorney’s fees for a claim of
fraud. See Gulf States Utils. Co. v. Low, 79 S.W.3d 561, 567 (Tex. 2002) (holding
attorney’s fees are not generally recoverable unless provided by statute or contract). 
Although Long objected to the trial court’s judgment on this basis in his amended
motion for new trial, he did not assert the matter as a basis for reversal in this Court,
and we therefore do not address this issue. See Tex. R. App. P. 38.1(h).
          We overrule Long’s issue number 10. 
Discovery and Trial Sanctions
          In issue 11, Long contends that United waived any complaint regarding the
conduct by Long that the trial court concluded was sanctionable because United was
aware before trial of the sanctionable conduct and failed to bring its challenges prior
to trial. In issue 12, Long asserts that the trial court abused its discretion in ruling
that Long pay $45,000 to United as a sanction because (1) United did not raise its
claim for sanctions until after the trial began, (2) Long did not introduce the
documents in question into evidence at the trial, but rather objected to their
introduction, and (3) the trial court’s conclusions are erroneous and unfounded. 
            “Failure to obtain a pretrial ruling on discovery disputes that exist before
commencement of trial constitutes waiver of any claim for sanctions based on that
conduct.” Remington Arms Co. v. Caldwell, 850 S.W.2d 167, 170 (Tex. 1993)
(holding that when party is aware of pretrial misconduct, such as abuse of discovery,
party must request pretrial hearing and ruling, or party waives right to complain about
misconduct). Although a party may not have conclusive evidence of misconduct until
after the commencement of trial on the merits, a party’s failure to obtain a pretrial
ruling concerning pretrial misconduct, of which it is aware, results in waiver of the
right to complain about the pretrial misconduct. Meyer v. Cathey, 167 S.W.3d 327,
333 (Tex. 2005) (holding that although Meyer obtained conclusive proof of
misconduct during trial, Meyer failed to preserve claim for sanctions by not objecting
prior to trial because Meyer was aware from deposition testimony that Cathey made
false representations during discovery concerning content of resume). A party does
not lose its right to obtain sanctions during or after trial, however, when the party was
unaware of the objectionable matter prior to trial or when the objectionable matter
occurred after the commencement of trial. Id. 
          The first mention of a motion for sanctions that appears in the record occurred
on the second day of the jury trial, when United asked the trial court to sanction Long
for injecting false documents into discovery. Long’s trial attorney responded to the
motion for sanctions by asserting that it was brought untimely and was a surprise to
him. In explaining that he had not had time to prepare a response to United’s motion
for sanctions, Long’s trial attorney stated, “This is the first I’ve ever heard of a
sanction motion, so I haven’t had time to prepare a response to that.” The trial court
responded to Long’s objections by stating, “Then you would not object to the Court
carrying this along and ruling at the conclusion of the jury verdict?” Long’s trial
attorney then agreed to address the sanctions issue after the receipt of the jury’s
verdict. Most importantly, this discussion did not occur until the second day of trial.
          After the jury’s verdict, United filed its first written motion for sanctions
requesting sanctions in an amount of $75,000 for Long’s production of falsified
documents during discovery.


 About two weeks later, United filed an amended
motion for sanctions that added assertions regarding Long’s conduct during trial.


           The trial court held a hearing on the sanctions motion on September 20, 2002. 
At that hearing, the court inquired whether any pretrial motion for sanctions was
made by United, because the court’s file did not contain a written pretrial motion for
sanctions. A discussion then ensued about whether an oral motion for sanctions was
made prior to the commencement of trial. The record shows, as follows:
[The Court]: I had requested the parties to look for a
Motion for Sanctions because I recalled one
being presented to the Court. There is no
written Motion for Sanctions in the file. The
Motion for Sanctions is one that was made
orally prior to the beginning of the trial. I at
that time instructed the parties that I would
take it up posttrial and would not take it up
during the trial. Mr. Scully, is that your
recollection?
 
[Long’s attorney]: I don’t remember the substance of the Motion
for Sanctions but I do remember Mr.
McCormick raising the issue prior to trial.
 
[The Court]: And that I refused to accept it at that time?
 
[Long’s attorney]: I believe that’s correct, Your Honor.
 
[The Court]:Is that your understanding, Mr. McCormick?
 
[United’s attorney]:Yes, Your honor; I just don’t remember the
timing of it, Your Honor, when it was made.
 
[The Court]: I think it was just before I was about to bring
in the jury for voir dire, which is not a good
time to bring a motion before the Court.

          After determining that an oral motion for sanctions was made before the
commencement of trial, the trial court conducted an evidentiary hearing, at which
Long and United’s attorney each testified. Long’s testimony at the sanctions hearing
acknowledged that before trial, no one, other than his own attorneys, was aware of
his belief that Exhibit 38 did not contain his original correspondence.


 
          After the hearing, the trial court’s judgment ordered sanctions in the amount
of $45,000.00 against Long for his pretrial conduct that consisted of injecting forged
documents upon the trial court in an attempt to avoid payment of a legal debt and
submitting other forged documents during the discovery process in this case and his
conduct during trial that consisted of denials, for the first time at trial, that the
signature on the original documents was his signature.



          Two of the grounds for the imposition of sanctions in the trial court’s judgment
plainly reference conduct that occurred pretrial—the tendering of forged documents
to avoid payment of a legal debt and submitting forged documents during the
discovery process. Because United was aware of these discovery abuses before trial,
United was required to obtain a pretrial ruling to avoid waiving its right to complain
about sanctions for the pretrial conduct. See Meyer, 167 S.W.3d at 333; Remington
Arms Co., 850 S.W.2d at 170. 
          The record shows, however, that the trial court refused to hear and refused to
rule on an oral pretrial motion for sanctions made by United. But the record does not
show the substance of United’s oral pretrial motion. We cannot discern from the
record before us that the trial court refused to hear, consider, or rule on the same
grounds for sanctions that were later asserted during trial. We conclude that United
did not preserve its pretrial, off-the-record oral motion for sanctions because it did not
obtain a pretrial ruling on the issue of fraudulent documents produced during pretrial
discovery. Further, we hold that the trial court’s refusal to rule on any oral pretrial
motion for sanctions does not excuse United’s failure to make a record as to the basis
for sanctions, because the record does not show the substance of that motion on
which the trial court refused to rule and that the motion could have pertained to
conduct other than the issue of the fraudulent documents. 
          The record suggests that the motion for sanctions concerning the injection of
forged documents through pretrial discovery was first made during trial rather than
pretrial. On the second day of trial, when United asked the trial court to sanction
Long for injecting false documents during discovery, Long’s trial attorney responded
by asserting that United’s motion for sanctions was brought untimely and that “This
is the first I’ve ever heard of a sanction motion, so I haven’t had time to prepare a
response to that.” Thus, even if we were to conclude that United raised its motion for
sanctions at that point, this did not occur until the second day of trial, which was
untimely. Meyer, 167 S.W.3d at 333; Remington Arms Co., 850 S.W.2d at 170. 
Although Long’s attorney agreed to defer discussion of the motion for sanctions from
mid-trial to posttrial, that agreement was made after an objection to the timeliness of
the sanctions motion. Regardless of whether the sanctions issue was discussed when
it was first brought by United’s trial attorney on the second day of trial or whether the
sanctions matter was discussed after the jury trial by agreement of the parties, the
motion was untimely asserted under Remington Arms and Meyers because the motion,
which pertained to pretrial discovery complaints, should have been brought pretrial. 
Meyer, 167 S.W.3d at 333; Remington Arms Co., 850 S.W.2d at 170. We therefore
conclude that Long’s agreement to defer the discussion from mid-trial to posttrial
does not constitute waiver of his complaint that the sanctions motion concerning
pretrial conduct was untimely asserted.
          Part of the judgment for sanctions, however, was premised on Long’s denial
for the first time at trial that the signature on the documents was his signature,
conduct that occurred after the commencement of trial. Conclusion of Law number
two states that “The assertion by defendant at trial and the sanctions hearing that
Exhibit 38 did not contain the documents that were tendered by the defendant as
original documents pursuant to a Motion to Secure Evidence interfered with the
orderly and proper administration of justice, defiled the institution of the judiciary,
delayed trial of this cause, and needlessly increased the expenses of litigation.” 


 
          When a trial court uses its inherent powers to sanction, the trial court’s
discretion is limited in the following ways: (1) there must be a direct relationship
between the offensive conduct and the sanction imposed; and (2) the sanction
imposed must not be excessive. Greiner v. Jameson, 865 S.W.2d 493, 499 (Tex.
App.—Dallas 1993, writ. denied); State v. PR Investments & Specialty Retailers Inc.,
180 S.W.3d 654, 673 (Tex. App.—Houston [14th Dist.] 2005, no pet. h.). In other
words, the punishment should fit the crime; the sanction must be directed against the
abuse and toward remedying the prejudice caused to the innocent party. Id. Because
we have concluded that United waived its right to assert the pretrial complaints that
resulted in sanctions, we further conclude that the trial court must reassess the
sanctions imposed to address only the sanctionable conduct that occurred after the
commencement of trial. Moreover, we note that United presented the same evidence
regarding false documents produced by Long as a basis for the jury to award punitive
damages. The jury did so, and thus, United relies on this evidence to support the
jury’s award of punitive damages against Long. We therefore reverse the $45,000
sanctions award for redetermination in light of the holdings in this opinion. 
          In issue 12, Long asserts that the trial court abused its discretion by ordering
Long to pay United $45,000 as a sanction because United did not raise its claim for
sanctions until after the trial began. For the reasons explained above, we sustain that
portion of issue 12 that complains about the untimeliness of the sanctions award
concerning pretrial misconduct. Within issue 12, Long also asserts that he did not
introduce the documents in question into evidence at the trial, but rather objected to
their introduction. The record reflects that United’s attorney offered the documents
into evidence to show Long’s pattern of deception to avoid payment for the debt. 
Although United’s attorney offered the documents into evidence, the imposition of
sanctions was for Long’s conduct during trial for denying for the first time at trial
“that the signature on the documents was his signature.” Long also contends within
issue number 12 that the trial court’s conclusions are erroneous and unfounded. Long
has not included any argument as to issue 12 to support his assertions within the one
and one-half pages that constitute the argument section of his entire brief. To the
extent that Long is challenging the trial court’s conclusions of law, Long’s failure to
explain his assertion constitutes waiver of that issue in this appeal. See Ryan v.
Abdel-Salam, 39 S.W.3d 332, 336 (Tex. App.—Houston [1st Dist.] 2001, pet.
denied); Franz v. Katy Indep. Sch. Dist., 35 S.W.3d 749, 755 (Tex. App.—Houston
[1st Dist.] 2000, no pet.).
Conclusion
          We reverse the portion of the judgment awarding sanctions to United and
remand the cause for redetermination of sanctions after consideration of conduct that
occurred only after the commencement of trial. We affirm the judgment of the trial
court in all other respects.
 
                                                             Elsa Alcala
                                                             Justice

Panel consists of Chief Justice Radack and Justices Alcala and Bland.